RADCLIFFE, APPELLEE, *v.* ARTROMICK INTERNATIONAL, INC. ET AL.; OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT.

[Cite as Radcliffe *v.* Artromick Internatl., Inc. (1987), 31 Ohio St. 3d 40.]

(No. 86-1568—Decided June 10, 1987.)

*Sue Livensparger,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Patrick A. Devine* and *George H. Calloway,* for appellant.

*Per Curiam.* The issue before us is whether a person has, pursuant to R.C. 4141.291(A)(2), worked in employment three weeks, where she performs services for two weeks and receives severance pay that is allocated to a third week. For the circumscribed reasons which follow, we hold that she has.

The record demonstrates that Radcliffe voluntarily quit her work with N. Wasserstrom & Sons solely to accept a better paying job. She thereby quit work without just cause and became disqualified from receiving unemployment benefits, pursuant to R.C. 4141.29(D)(2)(a).[2] Generally, unemployment benefits are fully suspended until the individual becomes reemployed in employment subject to an unemployment compensation law, works six weeks, earns the requisite amount of wages and is otherwise eligible, pursuant to R.C. 4141.29(G). However, R.C. 4141.291 provides a special exception to R.C. 4141.29(G) for persons who voluntarily quit their employment to immediately accept another job, generally at higher pay. R.C. 4141.291 provides, in pertinent part:

"(A)  Notwithstanding section 4141.29 of the Revised Code, an individual who voluntarily quits his work:

"* * *

"(2)  * * * to accept other employment subject to sections 4141.01 to 4141.46 of the Revised Code, or the unemployment compensation act of another state, or of the United States, where he commences such employment within seven calendar days, and in such employment works three weeks and earns wages equal to one and one-half times his average weekly wage or one hundred eighty dollars, whichever is less;

"(3)  Shall, under the conditions specified in either division (A)(1) or (2) of this section, remove the disqualification imposed by division (D)(2)(a) of section 4141.29 of the Revised Code and shall be deemed to have fully complied with division (G) of such section."

It is not disputed that Radcliffe commenced employment with Artromick within seven days of her quitting from N. Wasserstrom & Sons. Nor is it disputed that she earned the requisite wages. The dispute centers

_____

[2] R.C. 4141.29(D) provides, in part:

"Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2)  For the duration of his unemployment if the administrator finds that:

"(a)  He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

on the proper construction of the phrase, "* * * and in such employment works three weeks * * *."

We begin by noting that R.C. 4141.46 requires that the unemployment compensation laws be liberally construed. Second, the word "works" is not defined in R.C. Chapter 4141, and thus must be read in the context of that chapter and construed according to the rules of grammar and common usage. R.C. 1.42.

Ordinarily, courts must give the words used in statutes their plain and ordinary meaning. *Coventry Towers, Inc.* v. *Strongsville* (1985), 18 Ohio St. 3d 120, 122, 18 OBR 151, 152, 480 N.E. 2d 412, 414. However, when used as an intransitive verb, as it is here, "works" has two ordinary meanings:

"-vi. worked or wrought, working 1. to do work; labor; toil 2. to be employed." Webster's New World Dictionary of the American Language (Rev. Ed. 1984), at 689.

The legislature has used the word "works" in R.C. Chapter 4141 in both connotations: work as labor and work as employment.[3] In resolving the dilemma of which connotation was intended, we are further aided by the object sought to be obtained by, and the bureau's construction of, the statute. R.C. 1.49.

R.C. Chapter 4141 requires employers covered by its provisions to pay contributions, or taxes, on wages and other remuneration paid by them with respect to employment. R.C. 4141.09 and 4141.25. These contributions are used for the payment of compensation to workers who become unemployed through no fault of their own. R.C. 4141.29. In addition, various duties are imposed upon the employer, including the duty to keep employment records, R.C. 4141.18, and the duty to furnish information to the administrator on wages and remuneration paid to its employees, R.C. 4141.20. The unemployed individual's entitlement to compensation is determined on the basis of employment with a covered employer, the length of his employment and the amount of remuneration paid in such employment:

---

[3] The word "work" appears no less than eighty-nine times in R.C. Chapter 4141. Examples of the use of the term "work" as a synonym for "labor" or "toil" include: R.C. 4141.12 (empowering the administrator to consolidate the functions of two bureau departments "whenever the *work* of two departments is such that a consolidation of duties may be effected" [emphasis added]); R.C. 4141.01(A)(2) (providing that an individual employed to perform the *work* of any agent of an employer is employed by such employer, provided the employer had actual or constructive knowledge of the *work*). Examples of the term "work" used as a synonym for "employment" include: R.C. 4141.28(D)(1) (directing the administrator or his deputy to examine the applicant's claim for benefits and determine whether the disqualification sections apply to his "most recent separation and * * * prior separations from *work* * * *" [emphasis added]); R.C. 4141.29(D)(2)(a) (denying benefits to a person ·who has "quit his *work* without just cause" [emphasis added]). Finally, R.C. 4141.29(A)(4)(a) includes examples of *both* contexts: "Is able· to *work* and available for suitable *work* and is actively seeking suitable *work* * * *." (Emphasis added.) The term aptly illustrates Judge Learned Hand's observation that "[w]ords are chameleons, which reflect the color of their environment." *Commissioner* v. *National Carbide Co.* (C.A. 2, 1948), 167 F. 2d 304, 306.

" 'Benefit year' with respect to an individual means the fifty-two week period beginning with the first day of that week with respect to which he first files a valid application for determination of benefit rights, and thereafter the fifty-two week period beginning with the first day of that week with respect to which the individual next files a valid application for determination of benefit rights after the termination of his last preceding benefit year * * *. *Any application* for determination of benefit rights made in accordance with section 4141.28 of the Revised Code *is valid if the individual filing such application is unemployed, has been employed by an employer or employers subject to sections 4141.01 to 4141.46 of the Revised Code, in at least twenty calendar weeks within his base period, and has earned remuneration of at least twenty dollars during each of such twenty weeks. * * *"* (Emphasis added.) R.C. 4141.01(R).

The framework for reinstatement of entitlement to compensation, pursuant to R.C. 4141.29(G) and 4141.291(A)(2), is the same: covered employment for a certain length of time (six weeks and three weeks, respectively) at a minimum amount of remuneration. The only logical construction of "works" in R.C. 4141.291(A)(2) is thus as a synonym for "is employed."

Finally, the Bureau of Employment Services has determined that severance pay and similar type separation payments constitute remuneration and, when allocated to a specific time period, constitute a period of employment. Ohio Adm. Code 4141-9-07 and 4141-9-08 provide[4]:

"[4141-9-07] Dismissal payments, termination pay, separation allowance, etc., made by the employer to an employee constitutes remuneration and are subject to contributions. When such payments are allocated to a specified period, such period is considered a period of employment and shall be so reported.

"[4141-9-08] Remuneration in lieu of notice is a continuation of wages for a designated period after termination of employment. Remuneration in lieu of notice constitutes wages and is subject to contributions. The period covered by remuneration in lieu of notice is considered a period of employment and shall be so reported."

The legislature, in enacting R.C. 4141.291, is presumed to have intended a just and reasonable result, feasible of execution. R.C. 1.47; see *Lake Brady Assn.* v. *Brown* (1980), 62 Ohio St. 2d 43, 16 O.O. 3d 34, 402 N.E. 2d 1187. The court of appeals reasonably construed that statute when it concluded that, by expressly allocating the severance pay to the period

---

[4] Ohio Adm. Code 4141-9-07 was repealed, effective July 3, 1986 (1985-1986 Ohio Mo. Rec. 1340). Ohio Adm. Code 4141-9-08 was amended, effective July 3, 1986 (1985-1986 Ohio Mo. Rec. 1340) to read:

"Remuneration in lieu of notice is a continuation of wages for a designated period after termination of employment. Remuneration in lieu of notice constitutes wages and is subject to contributions. Remuneration in lieu of notice may be allocated to weeks and shall be deemed to be remuneration for the purposes of establishing a credit week and a benefit year."

from February 29, 1984 through March 9, 1984, Artromick indicated Radcliffe remained in its employ during that period of time. As Artromick was required to make contributions and report the covered period as a week of employment, Radcliffe was employed with it for three weeks, and was thereby entitled to compensation benefits pursuant to R.C. 4141.291.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., and WRIGHT, J., dissent.

WRIGHT, J., dissenting. Since I am unable to agree with the breadth of the majority's interpretation of the term "work," as used within R.C. 4141.291(A), I must respectfully dissent as both the rationale and the result fly in the face of common sense.

At the outset, I would note that the majority correctly observes that the General Assembly has chosen to use the word "work" at least eighty-nine times within R.C. Chapter 4141, without providing a definition for the term. In view of the ambiguity which has arisen as a result of the absence of a definitional section for the term, I would urge that the General Assembly correct this oversight so that R.C. Chapter 4141 can be implemented in accordance with legislative intent. However, absent a definitional section for the term, I am not convinced that the majority has properly construed the term in relation to R.C. 4141.291.

R.C. 4141.29(D)(2)(a) provides, in pertinent part:

"Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

Appellee quit her employment with N. Wasserstrom & Sons without just cause in order to accept a better position with Artromick International, Inc. Thus, appellee was not eligible for unemployment benefits unless she met the criteria imposed under R.C. 4141.291. That provision evinces a public-policy determination by the General Assembly that when an individual tries to improve his or her position by taking another job, that person still remains eligible for unemployment benefits provided certain conditions are met. In relevant part, R.C. 4141.291(A) provides:

"Notwithstanding section 4141.29 of the Revised Code, an individual who voluntarily quits his work:

"* * *

"(2)  * * * to accept other employment * * * where he commences such employment within seven calendar days, *and in such employment works three weeks and earns wages* equal to one and one-half times his average weekly wage or one hundred eighty dollars, whichever is less;

"(3)  Shall, under the conditions specified in either division (A)(1) or (2) of this section, remove the disqualification imposed by division (D)(2)(a) of section 4141.29 of the Revised Code and shall be deemed to have fully complied with division (G) of such section." (Emphasis added.)

If appellee "worked" for three weeks for Artromick, then her disability arising under R.C. 4141.29(D)(2)(a) would be removed pursuant to R.C. 4141.291(A)(2). The question necessarily arises as to what constitutes "work" under R.C. 4141.291(A)(2). Since the word is not a technical term, it must be read in the context in which it is used, and construed according to its *common usage.* See R.C. 1.42.

Webster's New World Dictionary of the American Language (Rev. 1984 Ed.) 689, defines "work" in the first instance as follows: "1. to do work; labor; toil * * *." In addition, Webster's Ninth New Collegiate Dictionary (1983) defines "work" as fashioning or creating "* * * a useful or desired product by expending labor or exertion on: * * * to cause to toil or labor * * *." Under these definitions, or any other common usage of the term, it cannot be said that appellee "worked" for three weeks when Artromick gave her severance pay for the period commencing February 29 through March 9.

The only arguable section within R.C. Chapter 4141 justifying allowance of appellee's claim is R.C. 4141.31(A). The final paragraph of that section provides:

"Any payment allocated by the employer or the administrator of the bureau of employment services to weeks under division (A)(1) [remuneration in lieu of notice], [or] (A)(4) [remuneration in the form of separation or termination pay paid to an employee at the time of his separation from employment] * * * shall be deemed to be remuneration for the purposes of establishing a credit week and a benefit year under divisions (O)(1) and (R) of section 4141.01 of the Revised Code."

"Credit week" is a term used throughout R.C. Chapter 4141, and while an employee who earns at least $85.10 will have established a "credit week," the establishment of a "credit week" does not always lead to the conclusion that a claimant has "worked." Without question, the General Assembly was familiar with the term "credit week," having employed the term in various sections of R.C. Chapter 4141. Nevertheless, when the General Assembly decided to requalify employees for benefits who voluntarily quit one position in order to assume another position, the requirement was inserted into R.C. 4141.291(A)(2) that the employee *work* at least three weeks — not that the employee establish three credit weeks.

In order to sustain the position reached by the trial court and the court of appeals, the majority has, in essence, deleted the phrase "works three

weeks" from R.C. 4141.291(A)(2), and inserted in its place the phrase "establishes three credit weeks." Such insertions and deletions violate well-established rules of statutory construction, since "[i]n ascertaining the legislative intent of a statute, 'It is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used.'" (Emphasis deleted.) *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 4, 12 O.O. 3d 1, 2-3, 387 N.E. 2d 1222, 1224, quoting from *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127, 49 O.O. 2d 445, 446, 254 N.E. 2d 8, 9. See, also, *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, 2 OBR 625, 626, 442 N.E. 2d 1295, 1296.

Finally, acceptance of the majority's position produces absurd results in contravention of well-settled principles of statutory construction. See *State, ex rel. Haines,* v. *Rhodes* (1958), 168 Ohio St. 165, 5 O.O. 2d 467, 151 N.E. 2d 716, paragraph two of the syllabus; *State* v. *Nickles* (1953), 159 Ohio St. 353, 50 O.O. 322, 112 N.E. 2d 531, paragraph one of the syllabus; *In re Little Printing Co.* (1983), 4 Ohio St. 3d 214, 216, 4 OBR 531, 533, 448 N.E. 2d 152, 154. In the instant case, there was apparently no agreement obligating Artromick to pay appellee *any* remuneration whatsoever upon severance. Thus, when severance pay was advanced after approximately one week of work, it was done so on Artromick's own volition. To now sustain appellee's claim will cause employers in situations such as this in the future to forego advancing severance pay in order to escape potential unemployment claims. Today's holding could lead to situations where employers will be unfairly punished when, with benevolent purposes, they elect to advance severance pay to employees while being under no obligation to do so. Where, as here, the employee commences working within seven calendar days of voluntarily quitting a previous position, and the decision to terminate the working relationship is made prior to the expiration of three weeks, the employer can be unfairly penalized as a result of its own largesse. Unfortunately, today's decision will force employers to forego such voluntary payments to the ultimate detriment of every working person in Ohio. I, for one, cannot sanction such an approach under a purported "liberal" construction of R.C. Chapter 4141, or otherwise.

The majority tries to soften this result by concluding that since Artromick allocated the severance pay to the period from February 29, 1984 through March 9, 1984, that appellee remained in its employ. In other words, the majority concludes that because Artromick gained a tax advantage as a result of the manner in which appellee's severance pay was treated, she must now be considered as having "worked" for three weeks. Implicitly, the majority recognizes that if Artromick had treated, on its books, the severance pay in a different fashion, appellee would not have satisfied the conditions precedent to requalify for unemployment benefits under R.C. 4141.291(A). Assuming, *arguendo,* the validity of this construction, appellee has only satisfied two of the three criteria contained within

R.C. 4141.291(A): namely, that she commenced her employment within seven calendar days after leaving her former position, and that she earned wages equal to one and one-half times her average weekly wage or one hundred eighty dollars, whichever is less. Remaining unsatisfied, however, is the requirement that appellee work three weeks, a requirement separate and apart from the majority's characterization of how the severance pay was carried on the company's books. In short, I simply can not accept the majority's reasoning that the receipt of severance pay constitutes "work."

For the foregoing reasons, I would reverse the judgment of the court of appeals and reinstate the decision of the Unemployment Compensation Board of Review denying appellee's claim for unemployment compensation benefits.

MOYER, C.J., concurs in the foregoing dissenting opinion.