HAMILTON, APPELLANT, *v.* HAMILTON, APPELLEE.

(No. 87AP-1041—Decided August 2, 1988.)

---

*Robert N. Wistner Co., L.P.A.,* and *Robert N. Wistner,* for appellant.

*Bruce Hamilton, pro se.*[1]

STEPHENSON, J. This is an appeal from a judgment entered by the Franklin County Court of Common Pleas, Division of Domestic Relations, which, *inter alia,* overruled the objection of Kathleen Hamilton, plaintiff below and appellant herein, to a referee's report which denied a request that attorney fees expended by appellant in a post-divorce child support contempt proceeding be withheld from the personal earnings of Bruce Hamilton, defendant below and appellee herein, pursuant to R.C. 3113.21.

Appellant assigns the following error:

"In a child support enforcement proceeding, when the Trial Court finds the payor in contempt, and orders him to pay the arrearage by payroll deduction, plus $1,500.00 as litigation expense money for the custodial parent, it is error for the Trial Court to refuse to treat the expense money as additional child support with payment to be enforced pursuant to the same payroll deduction procedures pursuant to House Bill 509 (Section 3113.21, Revised Code)."

On November 28, 1975, the parties herein were married and three children were born as issue of such marriage: Nicolle Kathleen (born October 24, 1978); Michelle Marie (born December 31, 1979); and Megan Colleen (born June 28, 1984). On August 19, 1986, appellant filed a complaint seeking a divorce on the grounds that appellee had been guilty of extreme cruelty and gross neglect of duty.

On February 19, 1987, the trial court entered a decree of divorce in favor of appellant, finding appellee guilty of gross neglect of duty. The trial court granted custody of the parties' minor children to appellant and ordered appellee to pay child support in the amount of $30 per week per child to increase to $55 per week per child when appellee's gross income reached $18,000 per year. Appellee was additionally ordered to pay $990 in back temporary child support, to provide appellant with quarterly reports on his gross income, and to pay half of all medical, dental, optical and orthodontic expenses not covered or reimbursed by appellee's insurance coverage.

On February 19, 1987, the trial court filed an entry ordering appellee's employer, Remax/R.C.I. Group, to withhold from his personal earnings a sum equal to $90 per week for child support, plus poundage. On March 10, 1987, the trial court filed an entry ordering appellee to notify the court in writing of any change in employment, including self-employment, with such notification to include a description of the nature of any new employment in accordance with R.C. 3113.21.

On June 17, 1987, appellant filed a multi-branch motion seeking, *inter alia,* an order finding appellee in contempt of court for his failure to pay child support as ordered, his failure to provide quarterly reports of gross income, and for his failure to notify the court of his change of place of employment, and an order awarding appellant expense money for the necessity of prosecuting the contempt motion. A hearing was held before a court-appointed referee on appellant's motions and, on August 7, 1987, a referee's report was filed which recommended finding appellee in contempt of prior court orders. Although appellant's attorney had testified to attorney fees incurred by appellant of $1,500 plus costs of $55, the referee

[1] Appellee, representing himself on appeal, did not file an appellate brief herein.

recommended that appellee pay appellant's attorney fees in the amount of $750 plus costs of $55.

On August 13, 1987, the referee filed a supplemental report further recommending that appellee be permitted to purge himself of contempt by, *inter alia,* paying through employer wage withholding an additional sum of $10 per week per child on the child support arrearage until such was paid in full. It was also recommended that appellant be granted judgment for the previously recommended amount of attorney fees and costs.

On August 21, 1987, appellee filed objections to the report and recommendations of the referee. On August 28, 1987, appellant filed objections to the report and supplemental report of the referee, stating that the amount of expense money awarded was inadequate and that any expense money awarded was in the nature of child support and as such should be enforced by wage withholding pursuant to R.C. 3113.21.

On October 6, 1987, the trial court issued a decision overruling appellee's objections to the report and supplemental report, sustaining appellant's objection with regard to the inadequacy of attorney fees awarded, and overruling appellant's objection which sought wage withholding of the attorney fees award. On October 21, 1987, the trial court entered judgment reflecting its earlier decision and those parts of the referee's report which it approved by ordering the withholding by appellee's employer of an additional $10 per week per child on the child support arrearage, which was $1,440 as of June 15, 1987, until it was paid in full and by ordering appellee to pay appellant $1,500 in attorney fees and $55 in costs. In accordance with the earlier decision, no order was entered requiring withholding attorney fees and costs arising from the contempt proceedings.

Appellant's sole assignment of error asserts that in a child support enforcement proceeding, when the trial court finds the obligor in contempt and orders him to pay the arrearage by payroll deduction, plus $1,500 as litigation expense money for the custodial parent, it is error for the trial court to refuse to treat the expense money award as additional child support with payment to be enforced by the same payroll deduction procedures pursuant to R.C. 3113.21.

R.C. 3105.21 provides, in pertinent part, as follows:

"(A) Upon satisfactory proof of the causes in the complaint for divorce, annulment, or alimony, the court of common pleas shall make an order for the disposition, care, and maintenance of the children of the marriage, as is in their best interests, and in accordance with section 3109.04 of the Revised Code.

"* * *

"(C) *Each order for child support made or modified under this section on or after December 1, 1986, shall be accompanied by one or more orders described in division (D) or (H) of section 3113.21 of the Revised Code,* whichever is appropriate under the requirements of that section, a statement requiring all parties to the order to notify the bureau of support in writing of their current mailing address, their current residence address, and of any changes in either address, and a notice that the requirement to notify the bureau of support of all changes in either address continues until further notice from the court. *If any person required to pay child support under an order made under this section on or after April 15, 1985, or modified on or after December 1, 1986, is found in contempt of court for failure to make support payments under the order, the*

*court that makes the finding shall,* in addition to any other penalty or remedy imposed, *assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party,* as determined by the court, that arose in relation to the act of contempt." (Emphasis added.)

R.C. 3113.21(D)(1)(a) provides for mandatory wage withholding of, *inter alia,* support payment orders when such orders were issued on or after December 1, 1986, by stating as follows:

"If the court or the child support enforcement agency determines that the obligor is employed, the court shall issue an order requiring the obligor's employer to withhold from the obligor's personal earnings, a specified amount for support in satisfaction of the support order, to begin the withholding one week after receipt of the order, and to continue the withholding at intervals determined by the court in its order until further order of the court. To the extent possible, the amount specified in the order to be withheld shall satisfy the amount ordered for support in the support order plus any arrearages that may be owed by the obligor under any prior support order that pertained to the same child or spouse, notwithstanding the limitations of sections 2329.66, 2329.70, 2716.02, and 2716.05 of the Revised Code. * * *"

As used in R.C. 3113.21, "support order" means an order for the payment of support and "support" means "child support, alimony, and support for a spouse or former spouse." R.C. 3113.21(O)(6) and (7). Attorney fees are not expressly included within the definition of "support" as that term is utilized in the provisions for mandatory wage withholding pursuant to R.C. 3113.21(D)(1). Appellant essentially asserts that attorney fees incurred in the process of bringing a contempt motion due to the failure of the noncustodial parent to comply with a prior child support order constitute "child support" within the meaning of that term in R.C. 3113.21(O)(7).

The term "child support" is not defined in R.C. 3113.21 or any other relevant statute. Accordingly, the phrase must be read in context and construed according to the rules of grammar and common usage. R.C. 1.42; *Bohacek* v. *Ohio Bur. of Emp. Services* (1983), 9 Ohio App. 3d 59, 9 OBR 78, 458 N.E. 2d 408. "Child support" is the "legal obligation of parents to contribute to the economic maintenance, including education, of their children." Black's Law Dictionary (5 Ed. 1981) 217. It is at least arguable that attorney fees necessitated by noncompliance of a noncustodial parent with a child support order are, in effect, "child support" under such broad definition, in that they constitute an additional legal obligation relating to the contribution to the economic maintenance of the children.

The primary purpose of courts in interpreting a statute is to effectuate the intent of the General Assembly. *Vance* v. *St. Vincent Hospital* (1980), 64 Ohio St. 2d 36, 39, 18 O.O. 3d 216, 217, 414 N.E. 2d 406, 408; *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16, 45 O.O. 2d 262, 242 N.E. 2d 342. Legislative intent is primarily determined from the language of the statute itself, and the General Assembly must be assumed or presumed to have used the words of a statute advisedly. *Vance, supra; Stewart* v. *Trumbull Cty. Bd. of Elections* (1973), 34 Ohio St. 2d 129, 130, 63 O.O. 2d 227, 228, 296 N.E. 2d 676, 677; *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, 236-237, 36 O.O. 554, 556-557, 78 N.E. 2d 370, 374.

R.C. 1.49, which codifies judicially formulated rules of statutory construction, provides as follows:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

See, *e.g., Radcliffe* v. *Artromick Internatl., Inc.* (1987), 31 Ohio St. 3d 40, 42, 31 OBR 148, 150, 508 N.E. 2d 953, 955.

Ambiguous language is language which is susceptible to different interpretations or meanings, and a word or phrase is ambiguous if it is capable of being interpreted as referring to more than one object or event. *State, ex rel. Cunningham,* v. *Indus. Comm.* (1987), 30 Ohio St. 3d 73, 76, 30 OBR 176, 180, 506 N.E. 2d 1179, 1182. As previously noted, the term "child support" as utilized in R.C. 3113.21(O)(7) is reasonably susceptible to an interpretation which would include attorney fees incurred in a post-divorce child support contempt proceeding. Consequently, in interpreting R.C. 3113.21, we can consider the object sought to be obtained by the mandatory wage withholding provisions, the legislative history, and the consequences of different constructions of "child support." R.C. 1.49(A), (C) and (E); see, also, *Radcliffe, supra.*

In 1975, in order to remedy inadequate existing child support enforcement procedures, a federal child support program was created through amendments to the Social Security Act, whereby Part D, Title IV of the Act required all states participating in the Aid to Families with Dependent Children ("AFDC") program to adopt certain procedures to enforce child support orders. Section 659 *et seq.,* Title 42, U.S. Code. On August 16, 1984, the Child Support Enforcement Amendments, Pub. L. No. 98-378, to the Social Security Act were signed into law, with the purpose of the Act to strengthen child support enforcement by requiring states to implement effective enforcement procedures, including automatic wage withholding of child support payments. 4 U.S. Code Cong. & Adm. News (1984) 2397, Sen. Rep. No. 98-387. However, the Child Support Enforcement Amendments did not provide an independent basis upon which actions for garnishment of child support obligors' wages could be maintained, but left basic responsibility for child support enforcement to the states. 4 U.S. Code Cong. & Adm. News (1984) 2405, Sen. Rep. No. 98-387; Annotation, Construction and Application of 42 USCS § 659(a) Authorizing Garnishment Against United States or District of Columbia for Enforcement of Child Support and Alimony Obligations (1979), 44 A.L.R. Fed. 494, 497, Section 2(B).

In order to conform existing child support enforcement withholding procedures to certain mandates of the Federal Child Support Enforcement Amendments of 1984 and to make the state statutory enforcement provisions more effective, the Ohio General Assembly passed H.B. No. 614 (140 Ohio Laws, Part II, 4213) and H.B. No. 509 (141 Ohio Laws, Part II, 4725). Baldwin's Ohio Domestic Relations Law (1987) 393-394, Sections T39.01 (B) and (C); see, also, Baldwin's Ohio Legislative Service (1986) 5-564 *et seq.* Section 662(b), Title 42, U.S. Code defines "child support" as follows:

"The term 'child support', when used in reference to the legal obligations of an individual to provide such support, means periodic payments of funds for the support and maintenance of a child or children with respect to which such individual has such an obligation, and (subject to and in accordance with State law) includes but is not limited to, payments to provide for health care, education, recreation, clothing, or to meet other specific needs of such a child or children; *such term also includes attorney's fees,* interest, and court costs, when and to the extent that the same are expressly made recoverable as such pursuant to a decree, order, or judgment issued in accordance with applicable State law by a court of competent jurisdiction." (Emphasis added.)

See, also, Section 662(c), Title 42, U.S. Code, which includes attorney fees in the definition of "alimony."

Therefore, "child support" and "alimony" as defined by the Social Security Act in Section 662, Title 42, U.S. Code as amended in 1977, include attorney fees, and such fees are subject to enforcement by wage garnishment. Annotation, *supra,* at 507, Section 11. *Murray* v. *Murray* (C.A. 8, 1977), 558 F. 2d 1340. In that the Ohio statutory scheme is patterned in part after the federal scheme, and in light of the paramount objective of making child support enforcement more effective, it is apparent that the General Assembly, by not expressly defining "child support" in R.C. 3113.21(O)(7), left it to Ohio courts to define the scope and meaning of such term.

The Supreme Court of Ohio has held that "[a] trial court has authority, after the entry of a divorce decree, to enter an order requiring the divorced husband to pay reasonable expense money to his former wife to enable her to pay attorney fees incurred in post-decree proceedings relative to the support of the minor children of the marriage." *Blum* v. *Blum* (1967), 9 Ohio St. 2d 92, 38 O.O. 2d 224, 223 N.E. 2d 819, syllabus; see, also, R.C. 3105.21 (C). One of the foundations of the *Blum* holding was the court's recognition of the husband's financial responsibility to provide:

"* * * [A] reasonable allowance for expense money to employ the services of an attorney to prosecute or defend an action in a court concerning the enforcement of the duty of the divorced father — within reasonable limits — to support his minor children. Otherwise, as a practical matter, a divorced father would be insulated from his obligation of support whenever the divorced mother did not have the resources to pay an attorney." *Id.* at 93, 38 O.O. 2d at 225, 223 N.E. 2d at 820-821. See, also, *Cohen* v. *Cohen* (1983), 8 Ohio App. 3d 109, 110, 8 OBR 143, 145, 456 N.E. 2d 581, 583; *Saeks* v. *Saeks* (1985), 24 Ohio App. 3d 67, 71-72, 24 OBR 125-126, 493 N.E. 2d 280, 284.

"Necessaries" with respect to child support as appearing in former R.C. 3103.03 included a reasonable allowance for expense money to employ the services of an attorney to prosecute or defend an action concerning the enforcement of the duty of the noncustodial parent to pay child support. *Blum, supra; Saeks, supra.* This court has previously held, pursuant to *Blum, supra,* that because the purpose of requiring the noncustodial parent to pay child support is not to relieve the custodial parent of a portion of the child support obligation, but to make sufficient funds available for proper child support, attorney fees expended by a custodial parent to enforce a child support order are "expenditures in the nature of additional child support necessary to achieve for the child the standard of living that the combined incomes of the parents will permit."

*Hummer* v. *Hummer* (Aug. 28, 1986), Franklin App. No. 86AP-293, unreported.

Therefore, attorney fees for obtaining and/or enforcing child support are a legitimate element of a support order, and when so ordered they are additional child support and not attorney fees. Baldwin's Ohio Domestic Relations Law (1987) 374, Section T37.02; see, also, *Hummer, supra.* This is the same rationale used in alimony award cases even though R.C. 3105.18 and Civ. R. 75(N) do not define "alimony" to expressly include attorney fees. *Saeks, supra; Cassaro* v. *Cassaro* (1976), 50 Ohio App. 2d 368, 4 O.O. 3d 320, 363 N.E. 2d 753; *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85, 2 O.O. 3d 65, 355 N.E. 2d 894. It is a logical extension of such holdings that an attorney fees award in child support enforcement proceedings constitutes additional child support. Consequently, it logically follows that the mandatory wage withholding procedures of R.C. 3113.21 apply.

The court below ruled that R.C. 3113.21 was inapplicable to the attorney fees award in that R.C. 3113.21(O)(7) failed to define "support" as inclusive of payments "in the nature of" child support and the further absence of express statutory direction authorizing inclusion of attorney fees in R.C. 3113.21. However, in considering the objective of the General Assembly to provide more effective and efficient child support enforcement, the enactment of R.C. 3113.21(O)(7) in response to comparative federal legislation which includes attorney fees in its definition of "child support," the relevant law holding that such fees are essentially additional child support, and the public policy benefits to be gained by giving "child support" such a construction, we hold that the term "child support" as used in R.C. 3113.21(O)(7) includes reasonable attorney fees incurred by the custodial parent in a child support contempt proceeding. Such construction of the relevant statutory language comports with the presumption that the General Assembly intended a just and reasonable result that was feasible of execution. R.C. 1.47; *Radcliffe, supra,* at 43, 31 OBR at 151, 508 N.E. 2d at 956; *Lake Brady Spiritualists Camp Assn.* v. *Brown* (1980), 62 Ohio St. 2d 43, 16 O.O. 3d 34, 402 N.E. 2d 1187.

For the foregoing reasons, appellant's assignment of error is sustained and the judgment of the trial court is reversed and this cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

STRAUSBAUGH and MCCORMAC, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting by assignment.