OPINION *Page 2 
{¶ 1} Appellant, the Unemployment Compensation Review Commission, appeals from a Monroe County Common Pleas Court judgment reversing its decision that denied the application of appellee, William Brooks, for unemployment compensation.
 {¶ 2} Brooks is a member of the United Steelworkers of America Union. He was employed by Ormet Primary Aluminum Corporation (Ormet) as a steelworker from March 1974 through early 2004, when Ormet discharged him. Brooks filed a grievance challenging his discharge, which an arbitrator sustained. On December 28, 2004, the arbitrator ruled that Brooks was to be returned to work and to be "made whole for all losses that he incurred." However, Brooks never received back pay and never returned to work at Ormet.
 {¶ 3} Brooks filed an application for unemployment compensation on April 8, 2005. The Ohio Department of Job and Family Services disallowed the claim stating that Brooks: (1) did not have at least 20 qualifying weeks of employment and did not earn an average weekly wage of at least $186 during the base period of April 1, 2004 to March 31, 2005; and (2) did not work six weeks or earn an average weekly wage in excess of three times the average weekly wage determined for his previous benefit year after the end of his previous benefit year and before he filed his application on April 8. Brooks filed an appeal with the redetermination unit, where the director affirmed the denial of unemployment compensation. Brooks next filed an appeal with the review commission.
 {¶ 4} A hearing officer conducted a hearing on Brooks' appeal where he heard testimony from Brooks and from Ormet's director of industrial relations. The hearing officer affirmed the disallowance of unemployment compensation.
 {¶ 5} Brooks next filed a request for review with the review commission. The review commission disallowed Brooks' request.
 {¶ 6} Brooks then filed an appeal with the common pleas court. The court reversed the review commission's decision, finding it to be unlawful. It found that Brooks' award of back pay satisfied the requirement that the claimant must "work" for *Page 3 
20 weeks during the previous year of employment. Therefore, the court concluded that Brooks was entitled to receive unemployment compensation benefits.
 {¶ 7} The review commission filed a timely notice of appeal on February 23, 2007.
 {¶ 8} The review commission raises a single assignment of error, which states:
 {¶ 9} "THE COMMON PLEAS COURT ERRED WHEN IT REVERSED THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION'S DECISION WHICH WAS NOT UNLAWFUL, UNREASONABLE, OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} The review commission argues that Brooks did not file a valid application for unemployment benefits because he did not meet the requirements of R.C. 4141.01(R)(1), which provides in part:
 {¶ 11} "Any application for determination of benefit rights * * * is valid if the individual filing such application is unemployed, has been employed by an employer * * * in at least twenty qualifying weeks within the individual's base period, and has earned or been paid remuneration at an average weekly wage of not less than twenty-seven and one-half per cent of the statewide average weekly wage for such weeks. For purposes of determining whether an individual has had sufficient employment since the beginning of the individual's previous benefit year to file a valid application, `employment' means the performance of services for whichremuneration is payable." (Emphasis added.)
 {¶ 12} A claimant's base period is defined as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year." R.C. 4141.01(Q)(1). Alternately, if a claimant does not have sufficient qualifying weeks and wages in the base period to qualify for unemployment benefits, "the individual's base period shall be the four most recently completed calendar quarters preceding the first day of the individual's benefit year." R.C.4141.01(Q)(2). *Page 4 
 {¶ 13} In this case, Brooks filed his application for benefits on April 8, 2005. Thus, his base period ran from April 1, 2004 through March 31, 2005. Brooks did not perform any work for Ormet during this time.
 {¶ 14} The review commission argues that because Brooks did not work 20 weeks or earn any money during his base period or during his alternate base period, his application for benefits was properly denied. It argues that Brooks had no employment from January 2004 through the time he filed his application.
 {¶ 15} The review commission points to the hearing officer's findings for support. The hearing officer found: (1) Brooks did not return to work after his reinstatement to work; (2) Brooks did not have 20 weeks of employment during the base period of April 1, 2004 through March 31, 2005; and (3) Brooks did not meet the intervening employment requirement of six weeks of employment after the end of his prior benefit year before he filed his application.
 {¶ 16} The review commission argues that Brooks did not "work" during his base period. It argues that "work" means labor in exchange for pay.
 {¶ 17} A claimant bears the burden of proving his entitlement to unemployment compensation benefits. Kosky v. Am. Gen. Corp., 7th Dist. No. 03-BE-31, 2004-Ohio-1541, at ¶ 9. An unsatisfied claimant may appeal the commission's decision to the trial court. R.C. 4141.282(A). The trial court shall reverse, vacate, modify, or remand the commission's decision if it finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). If the court does not find that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, then the court shall affirm the decision. Id.
 {¶ 18} A party unsatisfied with the trial court's decision may appeal to the court of appeals. The appellate court, like the trial court, is generally limited to reviewing whether the decision is supported by evidence in the record. Tzangas, Plakas Mannos v. Ohio Bur. of Emp.Serv. (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207, citing Irvine v.Unemp. Comp. Bd. of Review (1985), 19 Ohio St.3d 15, *Page 5 
18, 482 N.E.2d 587.
 {¶ 19} But when the issue is one of statutory construction, which presents a question of law, both the common pleas court and the appellate court exercise plenary powers of review. In re Claim ofRichardson (July 10, 1998), 6th Dist. No. E-97-140. Such a situation arises when the issue is the proper interpretation of the words "had employment" in R.C. 4141.01(R). Id.
 {¶ 20} Brooks relies extensively on Richardson, supra. In that case, Richardson was terminated from his employment and filed a grievance. An arbitrator found Richardson was wrongfully terminated and awarded him reinstatement and back pay. Richardson was then terminated once again. He filed an application for unemployment benefits. It was uncontested that Richardson performed no additional work for his employer after his first termination.
 {¶ 21} A hearing officer denied Richardson's application finding that he had performed actual work for only five of the six weeks required by R.C. 4141.01(R) for him to be eligible to claim benefits. The review commission denied a further review. Richardson appealed to the trial court. The trial court reversed the hearing officer's decision concluding that R.C. 4141.01(R) contains no provision which would require a claimant to perform actual work in a new benefit year in order to be eligible to claim benefits. The Ohio Bureau of Employment Services and the employer appealed.
 {¶ 22} On appeal, the court relied on R.C. 4141.01(R), which at that time provided:
 {¶ 23} "`Benefit year' with respect to an individual means the fifty-two week period beginning with the first day of that week with respect to which the individual first files a valid application for determination of benefit rights, and thereafter the fifty-two week period beginning with the first day of that week with respect to which the individual next files a valid application for determination of benefit rights after the termination of the individual's last preceding benefit year, except that the application shall not be considered validunless the individual has had employment in six weeks that is subject tothis chapter * * * and has, since the beginning of the individual's *Page 6 
previous benefit year, in the employment earned three times the average weekly wage determined for the previous benefit year." (Emphasis added.)
 {¶ 24} The appellants argued that the phrase "had employment" meant that the claimant must have actually done work for some employer during a minimum of six weeks in the new benefit period.
 {¶ 25} The hearing officer had agreed with the appellants. The hearing officer had found that during the benefit year, Richardson had worked only five of the required six weeks and that the arbitrator's award of back pay did not satisfy the actual work requirement of the statute.
 {¶ 26} The trial court concluded, however, that R.C. 4141.01(R) contained no requirement that an individual perform actual personal service to satisfy the statute's six-week employment requirement. The court of appeals agreed.
 {¶ 27} Both the trial court and the appellate court relied onRadcliffe v. Artromick International, Inc. (1987), 31 Ohio St.3d 40,508 N.E.2d 953, where the Ohio Supreme Court analyzed a similar requirement in R.C. 4141.291(A)(2), requiring that a claimant who voluntarily leaves one place of employment for another may be eligible for benefits, provided he or she, "commences such employment within seven calendar days, and in such employment works three weeks." The claimant had resigned from her former position to take a new job, where she was discharged after two weeks without just cause. However, she was given a week of severance pay. She applied for unemployment benefits but was denied on the basis that she had not "worked" for the new employer for three weeks.
 {¶ 28} The Court noted that R.C. 4141.46 requires that the unemployment compensation laws be construed liberally in favor of the applicant. Richardson, 6th Dist. No. E-97-140, citingRadcliffe, 31 Ohio St.3d at 42. It then concluded that R.C. Chapter 4141 uses the word "work" as both "to do work" and "to be employed." Id. The Court reasoned that the "work" requirement is to establish a set relationship between employer contributions to the system and remuneration paid to workers unemployed through no fault of their own. Id. Therefore, "the court held, the use of *Page 7 
the word `work' in the statute is synonymous with `employed.' The key consideration cited being whether the wages paid were subject to employer contributions into the system. Since Radcliffe's employer was required to make contributions into the system for the week she was paid in lieu of notice `* * * as a week of employment * * *' the [C]ourt concluded, she satisfied the `work' requirement and was entitled to benefits." Id.
 {¶ 29} The appellate court in Richardson relied on Radcliffe and reasoned:
 {¶ 30} "The most significant distinction between Radcliffe and this case is that there R.C. 4141 contains no definition of the word `work' while R.C. 4141.01 contains detailed definitions of what is and what is not `employment,' each of which contain some requirement for service. `Service' however, is not defined. We also note that Radcliffe defined `work' as `employment.' Even so, the Radcliffe court held that severance pay was employment and Shepard * * *[v. Wearever-Proctor Silex,Inc. (1991), 75 Ohio App.3d 414, 599 N.E.2d 789,] declared that disability pay, vacation pay, separation pay, and paid absence allowances were all subject to unemployment contribution and, therefore, qualified as `employment.'" Id.
 {¶ 31} Thus, the appellate court affirmed the trial court's decision to allow Richardson benefits due to the fact that the arbitrator ordered him compensated for the period of time he was wrongfully discharged and that he receive all benefits he was denied for that period. The court reasoned that the requirement that all of Richardson's benefits be restored would necessarily make the unpaid wages for this period subject to employer unemployment compensation contributions and, therefore, a period in which he "had employment."
 {¶ 32} While the logic of Richardson and Radcliffe is persuasive, R.C.4141.01(R) has been amended since it was applied to Richardson.[1] It now includes the sentence: "For purposes of determining whether an individual has had sufficient employment since the beginning of the individual's previous benefit year to file a *Page 8 
valid application, `employment' means the performance of services forwhich remuneration is payable." (Emphasis added.) R.C. 4141.01(R)(1). "Remuneration" is defined in the statute as "all compensation for personal services." R.C. 4141.01(H).
 {¶ 33} Given these definitions, we must determine whether Brooks' award of back pay constitutes "employment" for purposes of qualifying for unemployment compensation.
 {¶ 34} The trial court relied on Richardson, supra, andRadcliffe, supra. It found that although Brooks did not return to work at Ormet after his termination, the arbitrator's award of back pay was sufficient to satisfy the "employment" requirement under R.C.4141.01(R). The trial court reasoned that Brooks should not be punished because he has not yet actually received the back pay he was awarded. Instead, the court stated that the pertinent fact was that Brooks wasawarded back pay. The court made no mention of the change in the statutory language.
 {¶ 35} Pursuant to the arbitrator's award, Brooks should have never been terminated. Thus, Brooks should have remained an employee performing services during the applicable base period. And the arbitrator's award states that Brooks is to "be made whole for all losses that he incurred." Hence, for all intents and purposes, Brooks was an Ormet employee during the base period. Furthermore, Ormet still owes Brooks back pay. When it pays him that back pay, it will have to make employer contributions into the unemployment compensation system. This fact was crucial in the Radcliffe decision. And as pointed out by the Radcliffe Court, R.C. 4141.46 mandates that we liberally construe Ohio's unemployment compensation statutes. Given these considerations, we conclude that Brooks was "employed" by Ormet during the applicable base period.
 {¶ 36} But the review commission further argues that the arbitrator's decision in this case cannot be the basis for unemployment benefits. Citing, Youghiogheny Coal Co. v. Oszust (1986), 23 Ohio St.3d 39,491 N.E.2d 298. In Youghiogheny, Oszust was terminated by his employer and filed a grievance contesting the *Page 9 
discharge. The arbitrator denied the grievance, upholding the discharge under the collective bargaining agreement which required "just cause" for discharge. Oszust also applied for unemployment compensation. Unemployment compensation was allowed after the review board concluded that Oszust was not discharged for "just cause." The employer appealed.
 {¶ 37} The Ohio Supreme Court determined that "just cause" as determined by an arbitrator differed from a "just cause" determination for unemployment compensation purposes. It pointed out that the eligibility for unemployment compensation was not to be made on the basis of private arrangements for the settlement of grievances. Id. at 41. The Court reasoned:
 {¶ 38} "The General Assembly created the Ohio Bureau of Employment Services to decide claims for benefits under R.C. Chapter 4141. Appeals arising from the bureau's determinations are heard by the Unemployment Compensation Board of Review. R.C. 4141.06. The board of review has a statutory duty to hear the evidence, develop a record, and apply the law. On the other hand, an arbitrator's authority is confined to the resolution of issues submitted regarding contractual rights. The arbitrator is bound to interpret and apply the collective bargaining agreement in accordance with instructions from the parties to the agreement. The arbitrator simply has no authority to invoke this state's unemployment compensation laws in reaching a decision, regardless of the similarity of contractual language found within the substantive provisions of the statutes." Id.
 {¶ 39} The Court concluded that by filing a claim for unemployment compensation, Oszust asserted a statutory right independent of the arbitration process. Id. Therefore, it held: "A private arbitrator's determination upholding an employee's discharge for `just cause' according to the terms of the applicable collective bargaining agreement does not preclude the Ohio Bureau of Employment Services from concluding that the employee was not `discharged for just cause in connection with his work' within the meaning of R.C. 4141.29(D)(2)(a)." Id. at the syllabus. *Page 10 
 {¶ 40} But the case at bar is distinguishable fromYoughiogheny for two reasons. First, in Youghiogheny, the issue before the arbitrator was the same issue before the unemployment review board: a just cause determination. However, in this case, the issues are different. The arbitrator did determine that Ormet discharged Brooks without just cause. However, that was not the issue before the hearing officer and the review commission. Instead, the issue was whether or not Brooks was "employed" during his base period by way of the fact that he was awarded back pay. The arbitrator did not decide this issue. Second, as noted above, the unemployment compensation statute is to be applied liberally. Therefore, when there is doubt as to how to apply the statute, we must resolve the doubt in favor of the claimant receiving benefits. In Youghiogheny, following the arbitrator's decision would have resulted in the claimant being denied benefits. Conversely, in this case, following the arbitrator's decision resulted in the claimant receiving benefits.
 {¶ 41} Thus, because Youghiogheny is distinguishable from the case at bar and we find that Brooks was "employed" by Ormet during his base period, the review commission's sole assignment of error is without merit.
 {¶ 42} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich J., concurs.
Waite, J., concurs.
[1] R.C. 4141.01(R) was rewritten effective November 24, 1995. The old version was applied in Richardson, supra. *Page 1