[Cite as *Pierce v. Wayne Solutions Inc.*, 2011-Ohio-2324.]

STATE OF OHIO       )                    IN THE COURT OF APPEALS
                        )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

GARY D. PIERCE                  C.A. No.      10CA0026

     Appellant

     v.                         APPEAL FROM JUDGMENT
                             ENTERED IN THE
WAYNE SOLUTIONS, INC., et al.    COURT OF COMMON PLEAS
                             COUNTY OF WAYNE, OHIO
     Appellees               CASE No.     09-CV-0924

DECISION AND JOURNAL ENTRY

Dated: May 16, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1} The Will-Burt Company laid Gary Pierce off after he had worked for it from June 2008 until February 2009. The Unemployment Compensation Review Commission denied Mr. Pierce benefits because, up until two weeks before the layoff, he had been paid through a staffing company. According to the Commission, because Mr. Pierce quit his job at the staffing company so Will-Burt could hire him directly, he was not eligible for benefits. Mr. Pierce appealed, but the common pleas court affirmed the Commission's decision. We reverse because the Commission's just cause determination was unreasonable under the undisputed facts of this case and in light of the purpose of the Unemployment Compensation Act.

## BACKGROUND

{¶2} Mr. Pierce is an industrial engineer who was interested in working for Will-Burt. When he asked Will-Burt about employment, it told him that, although it needed someone with

his skills, it only hired people through a staffing agency called Wayne Solutions Inc. Wayne Solutions subsequently hired Mr. Pierce and placed him with Will-Burt.

{¶3} Under Will-Burt's and Wayne Solutions' contract, Will-Burt could not directly hire anyone that Wayne Solutions placed with it until the worker had worked for it for 90 days. In February 2009, Mr. Pierce's boss at Will-Burt asked him if he would like to work for Will-Burt directly. According to Mr. Pierce, his boss told him that Will-Burt would handle the transition for him. Mr. Pierce testified that, after he was directly hired by Will-Burt, his duties remained the same as before the switch.

{¶4} Ten days after Mr. Pierce began working directly for Will-Burt, Will-Burt laid off a number of its employees, including Mr. Pierce, because it suffered a "significant, abrupt drop" in its sales. Mr. Pierce testified that, because his position was eliminated, he would have lost his job at Will-Burt even if he had still been getting paid by Wayne Solutions.

{¶5} Mr. Pierce applied, and was initially approved, for unemployment benefits. The Department of Job and Family Services reconsidered its decision, however, when it realized that Mr. Pierce had not directly worked for Will-Burt for three weeks before his layoff. Mr. Pierce appealed to the Commission, but it affirmed, finding that he had voluntarily quit his position at Wayne Solutions without just cause to accept direct employment from Will-Burt.

{¶6} Wayne Solutions' benefits manager testified that a lot of its employees accept employment directly from its clients after they have worked for the client for a certain period of time. Regarding Mr. Pierce's separation from Wayne Solutions, she said that his employment record contains a note saying, "Assignment ended because he was hired in." She testified that, at the time Mr. Pierce went to work for Will-Burt, she had no reason to think that he would not qualify for unemployment benefits. There is also a letter in the record from Will-Burt explaining

that, if it had known that Mr. Pierce was one day short of qualifying for unemployment benefits, it would have continued his employment so that he could have met the criteria.

## QUIT WITHOUT JUST CAUSE

**{¶7}** Mr. Pierce's assignment of error is that the common pleas court incorrectly determined that he quit without just cause from Wayne Solutions for purposes of unemployment benefits. Courts review a decision of the Unemployment Compensation Review Commission under Section 4141.28.2 of the Ohio Revised Code. The common pleas court must affirm the Commission's decision unless it was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.28.2(H). We apply the same standard on appeal, focusing on the decision of the Commission instead of the common pleas court's decision. *Univ. of Akron v. Ohio Dep't of Job and Family Servs.*, 9th Dist. No. 24566, 2009-Ohio-3172, at ¶9; see *Tzangas, Plakas & Mannos v. Ohio Bureau of Emp. Servs.*, 73 Ohio St. 3d 694, paragraph one of the syllabus (1995).

**{¶8}** Under Section 4141.29(A) of the Ohio Revised Code, an individual is eligible for unemployment benefits if (1) he has filed a valid application for determination of benefit rights under Section 4141.28, (2) he has made a claim for benefits under Section 4141.28, (3) he has registered at an unemployment office, (4) he is able to work and is available for and actively seeking suitable work, (5) he is unable to obtain suitable work, and (6) he participates in reemployment services. An application for determination of benefit rights under Section 4141.28 is valid if "the individual filing such application is unemployed, has been employed by an employer or employers subject to this chapter in at least twenty qualifying weeks within the individual's base period, and has earned or been paid remuneration at an average weekly wage of

not less than twenty-seven and one-half per cent of the statewide average weekly wage for such weeks." R.C. 4141.01(R)(1).

{¶9} Even if an individual meets Section 4141.29(A)'s eligibility requirements, he is ineligible for unemployment benefits if he "quit work without just cause or has been discharged for just cause in connection with [his] work[.]" R.C. 4141.29(D)(2)(a). But see R.C. 4141.29.1(A)(2), (3) (providing that an individual is not disqualified under Section 4141.29(D)(2)(a) if he begins a new job within seven days and works for the new employer for three weeks). At first glance, the plain language of Section 4141.29(D)(2)(a) suggests that the "quit work . . . or has been discharged" determination refers to the circumstances that led to the individual's present lack of employment. The section has been construed to apply, however, to any job that the individual had during his "[b]enefit year." R.C. 4141.01(R)(1); *Radcliffe v. Artromick Int'l Inc.*, 31 Ohio St. 3d 40 (1987). For example, in *Radcliffe*, Betty Radcliffe quit a job that she had held for six months to accept a higher paying position at Artromick. Because of a personality conflict with her new supervisor, Artromick discharged her after only eight days without just cause. Instead of only examining whether Ms. Radcliffe was ineligible for unemployment benefits under Section 4141.29(D)(2)(a) based on the reason for her separation from Artromick, the Ohio Supreme Court looked back to the fact that she had voluntarily quit her job at the former employer. *Id.* at 41 ("Radcliffe voluntarily quit her work . . . to accept a better paying job. She thereby quit work without just cause and became disqualified from receiving unemployment benefits [under] R.C. 4141.29(D)(2)(a)."). Because Ms. Radcliffe had quit the previous job without just cause, the Supreme Court wrote that she was only eligible for benefits if she was deemed to have worked for Artromick for three weeks. *Id.* at 41-42 (citing R.C. 4141.29.1(A)).

{¶10} Similarly, even though Mr. Pierce was laid off from Will-Burt without just cause, that does not end our inquiry under Section 4141.29(D)(2)(a). Because Mr. Pierce worked for Wayne Solutions within the year before he applied for benefits, we must also consider whether he quit Wayne Solutions without just cause. See R.C. 4141.01(Q)(1) (defining "[b]ase period" as "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year"). If he quit Wayne Solutions without just cause, then he is only eligible for benefits if he meets the criteria listed in Section 4141.29.1. *Radcliffe v. Artromick Int'l Inc.*, 31 Ohio St. 3d 40, 43 (1987).

{¶11} Mr. Pierce has argued that it was unreasonable for the Commission to find that he "quit work" under Section 4141.29(D)(2)(a) because he remained in the same job. We do not reach this question because, even if Mr. Pierce quit his job at Wayne Solutions to be hired directly by Will-Burt, he had just cause for doing so.

{¶12} The Ohio Supreme Court has written that there is no "slide-rule" definition of just cause and that "each case must be considered upon its particular merits." *Irvine v. State Unemployment Comp. Bd. of Review*, 19 Ohio St. 3d 15, 17 (1985) (quoting *Peyton v. Sun T.V.*, 44 Ohio App. 2d 10, 12 (1975)). "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Id.* (quoting *Peyton*, 44 Ohio App. 2d at 12).

{¶13} The Ohio Supreme Court has also written that "[t]he determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act." *Irvine v. State Unemployment Comp. Bd. of Review*, 19 Ohio St. 3d 15, 17 (1985). "Essentially, the Act's purpose is 'to enable unfortunate employees, who become and remain *involuntarily* unemployed by adverse business and industrial conditions,

to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" *Id*. (quoting *Leach v. Republic Steel Corp.*, 176 Ohio St. 221, 223 (1964)). "Likewise, '[t]he [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" *Id*. (quoting *Salzl v. Gibson Greeting Cards Inc.*, 61 Ohio St. 2d 35, 39 (1980)). Acknowledging the purpose of the Act, the Ohio Supreme Court has held that "[t]he protections of an employee under R.C. 4141.29 are to be liberally construed [and] . . . the exceptions to R.C. 4141.29 should be narrowly construed." *Lorain County Auditor v. Ohio Unemployment Comp. Review Comm'n*, 113 Ohio St. 3d 124, 2007-Ohio-1247, at ¶31.

{¶14} Initially, we note that this is not a case in which an individual quit his job at one employer to accept a better paying job from another company. Compare *Radcliffe v. Artromick Int'l Inc.*, 31 Ohio St. 3d 40, 41 (1987). Rather, it is undisputed that Mr. Pierce only ever worked at Will-Burt, doing the exact same job regardless of whether he was getting paid through Wayne Solutions or directly by Will-Burt. Furthermore, it was uncontested that Mr. Pierce had the intention all along of working directly for Will-Burt, and that the only reason he contacted Wayne Solutions was because Will-Burt told him that it did its hiring through that company.

{¶15} This case, therefore, is similar to *Kubelka v. Bd. of Review, Ohio Bureau of Employment Servs.*, 8th Dist. No. 38098, 1979 WL 209852 (Jan. 25, 1979). In *Kubelka*, the United States Navy honorably discharged Mr. Kubelka in Florida due to a lack of work. He took a job as a temporary laborer at a machining company so that he could earn enough money to return to Ohio. After he returned to Ohio, he applied for unemployment benefits, but was denied them because he had voluntarily quit the machining company. The Eighth District reversed,

noting that it was undisputed that both Mr. Kubelka and the machining company "knew that his work would be for a short time only." *Id*. at *3.

**{¶16}** According to Wayne Solutions' benefit manager, it is common for Wayne Solutions' clients to hire its employees directly. She testified that the entire reason Wayne Solutions has a 90-day waiting period built into its contracts with its clients is "because we don't want [our employees] to work three days and get hired in and we lose all our fees."

**{¶17}** Mr. Pierce went to work for Wayne Solutions because it was the only way he could eventually work directly for Will-Burt. That was an entirely "justifiable" thing for an "ordinarily intelligent person" to do. *Irvine v. Unemployment Comp. Bd. of Review*, 19 Ohio St. 3d 15, 17 (1985) (quoting *Peyton v. Sun T.V.*, 44 Ohio App. 2d 10, 12 (1975)). Wayne Solutions is, admittedly, a temporary staffing company, who has had many of it employees "hired in" by its clients. The contracts that Wayne Solutions negotiates with its clients contain explicit provisions addressing that situation. Accordingly, construing Section 4141.29(D)(2)(a) liberally in favor of Mr. Pierce, we conclude that it was unreasonable for the Commission to determine that he quit Wayne Solutions without just cause.

**{¶18}** Unlike the Commission's decision, our conclusion is consistent with the purpose of the Unemployment Compensation Act. According to the Ohio Supreme Court, the Act exists "to protect [workers] from economic forces over which they have no control." *Tzangas, Plakas & Mannos v. Ohio Bureau of Employment Servs.*, 73 Ohio St. 3d 694, 697 (1995). Mr. Pierce worked for Will-Burt from June 2008 to February 2009, when he was laid off because of a significant, abrupt decline in demand for Will-Burt's products. Thus, Mr. Pierce's layoff was not because of any fault of his own, but rather was because of economic forces over which he had no control. See *id.*; *Irvine v. Unemployment Comp. Bd. of Review*, 19 Ohio St. 3d 15, 17 (1985).

The Commission's determination that he is ineligible for benefits because he was paid by two different companies, even though he was doing the exact same work, cannot be reconciled with the purpose of the Act.

{¶19} The parties have submitted supplemental briefing regarding *Smith v. Lindsay Excavating & Concrete*, 5th Dist. No. 2003CA00283, 2004-Ohio-986. In *Smith*, the staffing company for which Mr. Smith worked placed him with Lindsay as a laborer. Mr. Smith left the staffing company after 90 days to become a truck driver for Lindsay, but was discharged nine days later because he was involved in a collision while driving Lindsay's truck. The Fifth District wrote that "there is no doubt that [Mr. Smith's] quit from [the staffing company] to accept employment with Lindsay was a quit without just cause." *Id*. at ¶32. It rejected Mr. Smith's argument that he had been an employee of Lindsay while he was on the staffing company's payroll and that the Unemployment Compensation Act was unconstitutional as applied to him. *Id*. at ¶50, 63.

{¶20} *Smith* is distinguishable because Mr. Smith left the staffing company to do a different job than the one he had done while employed by the staffing company. In addition, Mr. Smith, apparently, did not argue that he had just cause for leaving the staffing company. Furthermore, the Fifth District did not mention the purpose of the Unemployment Compensation Act in discussing its reasons for its decision. We, therefore, conclude that *Smith* is not persuasive authority regarding the issues involved in this case. Mr. Pierce's assignment of error is sustained.

## CONCLUSION

{¶21} The Commission unreasonably determined that Mr. Pierce quit Wayne Solutions without just cause. The judgment of the Wayne County Common Pleas Court is reversed.

9

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

MICHAEL A. CREVELING, Attorney at Law, for Appellant.

JOHN TARKOWSKY, Attorney at Law, for Appellees.

MICHAEL DEWINE, Ohio Attorney General, and LAUREL BLUM MAZOROW, Assistant Attorney General, for Appellees.