OPINION
The parties in this action, appellant, Susan Truitt Smith, and appellee, Ronald L. Smith, were married on January 2, 1988. Two children were born during the marriage, Ian, on March 11, 1989, and Austen, on July 1, 1991. The parties were divorced pursuant to an agreed judgment entry decree of divorce filed on October 2, 1995. The decree was accompanied by a shared parenting plan. Appellee was obligated to pay $2,092 per month in child support and appellant was designated residential parent for school purposes.
At the time of the divorce, both parties lived in Upper Arlington. In November 1996, appellant sent appellee a letter informing him of her intent to move to Ostrander, Ohio. On February 19, 1997, appellant filed a notice of intent to relocate pursuant to the shared parenting plan. In February 1997, appellant moved to Ostrander.
On April 18, 1997, appellee filed a motion to modify child support because he had been terminated from his employment at Prudential Securities. On May 21, 1997, appellee filed a motion to modify parental rights and responsibilities, requesting that he be designated as the residential parent for school placement purposes, that the children be required to attend the Upper Arlington schools, and the residential schedule be changed so that the children reside with him on Tuesdays and Thursdays from 4:30 p.m. until the following morning at 9:00 a.m. during the school year. A guardian ad litem was appointed to represent the children.
The matter was tried before a magistrate, who filed a decision on September 21, 1998. The magistrate found it was in the best interest of the children to terminate the shared parenting plan and to designate appellant as the sole residential parent and legal custodian of the children. The court's model schedule for companionship and visitation, as set forth in Loc.R. 27, was adopted with modifications that were suggested by the guardian ad litem.
The magistrate found that appellee was voluntarily underemployed as defined in R.C. 3113.21.5. The magistrate imputed $153,000 in income to appellee and $42,500 to appellant, and ordered appellee to pay $1,065.09 per month per child in child support. Appellant's motion for contempt was dismissed due to a procedural error and her motion for attorney fees was sustained.
Appellee filed objections to the magistrate's decision. The trial court affirmed the magistrate's termination of the shared parenting plan and the designation of appellant as the sole residential parent and legal custodian of the children. The trial court reversed the award of attorney fees and costs, and the determination of child support. The child support issue was remanded to the magistrate; however, the trial court then issued a decision which vacated the remand of the calculation of child support to the magistrate and recalculated child support itself as follows:
 1) From April 18, 1997 through July 1, 1997, $130.50 per month, per child, plus processing charge;
 2) From July 1, 1997, to December 1997, $172.57 per month, per child, plus processing charge; and,
 3) From December 1997 forward $251.88 per month, per child, plus processing charge.
Appellant filed a timely appeal, case No. 99AP-453, and raises the following assignments of error:
 ASSIGNMENT OF ERROR NUMBER I THE TRIAL COURT'S FAILURE TO BASE APPELLEE-FATHER'S CHILD SUPPORT ON IMPUTED INCOME FROM HIS LAST EMPLOYMENT FROM WHICH HE WAS FIRED BECAUSE OF HIS OWN WRONGDOING WAS AN ABUSE OF DISCRETION.
 ASSIGNMENT OF ERROR NUMBER II THE TRIAL COURT'S FAILURE TO CONSIDER APPELLEE-FATHER'S NET ASSETS OF OVER $900,000.00 AND GROSS INCOME FROM 65 RENTAL UNITS OF OVER $183,000.00 IN CALCULATING CHILD SUPPORT WAS AN ABUSE OF DISCRETION.
 ASSIGNMENT OF ERROR NUMBER III THE TRIAL COURT ABUSED ITS DISCRETION IN IGNORING APPELLEE RON SMITH'S $183,000.00 GROSS RENTAL INCOME IN ITS COMPUTATION OF CHILD SUPPORT.
 ASSIGNMENT OF ERROR NUMBER IV THE TRIAL COURT'S IMPUTING OF INCOME TO APPELLANT-MOTHER WHERE SHE HAS NOT WORKED FOR OVER 10 YEARS WAS AN ABUSE OF DISCRETION.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ABUSED ITS DISCRETION IN IMPUTING INCOME TO APPELLANT-MOTHER WHERE THERE WAS NO EVIDENCE PRESENTED OF PREVAILING JOB OPPORTUNITIES AND SALARY LEVELS IN THE COMMUNITY IN WHICH SHE RESIDES.
 ASSIGNMENT OF ERROR NUMBER VI IT WAS AN ABUSE OF DISCRETION AND CONTRARY TO LAW FOR THE TRIAL COURT TO REVERSE THE MAGISTRATE'S AWARD OF FULL ATTORNEY FEES, GUARDIAN AD LITEM FEES AND COURT PSYCHOLOGIST FEES TO APPELLANT-MOTHER WHERE IT IS CLEAR FROM THE EVIDENCE PRESENTED THAT APPELLEE-FATHER HAS MORE RELATIVE ABILITY TO PAY THOSE FEES WHILE APPELLANT-MOTHER DOES NOT.
Appellee filed a notice of cross-appeal and raises the following cross-assignments of error:
 1. The trial court abused its discretion in making a complete redetermination of parental rights and responsibilities, rather than limiting the scope of the proceedings to the narrow issue of whether to modify the designation of the residential parent for school placement purposes and make an accompanying minor modification to the companionship schedule in the parties' Shared Parenting Plan.
 2. The trial court abused its discretion in holding that the record was void of sufficient evidence demonstrating that the parties' Shared Parenting Plan was premised on Ms. Truitt remaining in the Upper Arlington School District.
 3. The trial court abused its discretion in finding that termination of the parties' Shared Parenting Plan and designation of Ms. Truitt as the residential parent was in the best interests of the parties' children.
On May 5, 1999, appellee filed a motion to temporarily suspend child support payments due to an overpayment caused by the retroactive effect of the trial court's decision to reduce the obligation. Appellant argued that the trial court did not have jurisdiction since her appeal was pending. The trial court found it had jurisdiction and reduced the child support obligation to $151.88 per month per child from the $251.88 per month per child order until the $12,983.12 overpayment is credited.
Appellant filed a second appeal, case No. 99AP-818, which was consolidated with case No. 99AP-453. Appellant raises the following assignments of error in case No. 99AP-818:
 I. THE TRIAL COURT LACKED JURISDICTION TO FURTHER REDUCE CHILD SUPPORT WHERE THE ISSUE OF CHILD SUPPORT IS ON APPEAL.
 II. THE TRIAL COURT ABUSED ITS DISCRETION IN FURTHER REDUCING CHILD SUPPORT TO $151.88 PER MONTH PER CHILD.
 III. THE TRIAL COURT'S FURTHER REDUCTION OF CHILD SUPPORT WAS NOT IN THE BEST INTERESTS OF THE CHILDREN.
By the first assignment of error, appellant contends that the trial court abused its discretion and erred in its calculation of appellee's child support obligation by failing to impute income to appellee. A trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. Woloch v. Foster (1994), 98 Ohio App.3d 806, 810. The term "abuse of discretion" connotes more than an error of law or judgment and implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
Modification of a prior child support order involves a two-step process. The court must first determine whether the movant has demonstrated a substantial change in circumstances. If such a change is demonstrated, the court must then make a modification appropriate to the factors set forth in R.C.3109.05(A). Rossi v. Rossi (Sept. 15, 1998), Franklin App. No. 97APF12-1584, unreported. The trial court terminated the shared parenting agreement and designated appellant as the residential parent and legal custodian. Such determination constitutes a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order.Rossi. Thus, a review of the child support order was necessary.Rossi.
R.C. 3113.21.5 governs the calculation of a parent's child support obligation. In calculating and awarding child support, a trial court must consider the potential income, as well as the gross income, of a parent if the court determines that the parent is voluntarily underemployed. In this case, the magistrate determined that appellee was underemployed and imputed $153,000 to him as income. The trial court found this to be an error. R.C. 3113.21.5(A) provides, as follows:
As used in this section:
"Income" means either of the following:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
 (2) "Gross income" means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses to the extent described in division (B)(5)(d) of this section, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, * * * and potential cash flow from any source.
* * *
 (5) "Potential income" means both of the following for a parent that the court * * * determines is voluntarily unemployed or voluntarily underemployed:
 (a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides[.]
In the syllabus of Rock v. Cabral (1993), 67 Ohio St.3d 108, the Supreme Court of Ohio stated that:
 Whether a parent is "voluntarily underemployed" within the meaning of R.C. 3113.21.5(A)(5), and the amount of "potential income" to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion.
In Rock, the court rejected the argument that a parent is voluntarily underemployed within the meaning of the statute only if he has purposefully reduced his earnings in an effort to reduce his child support obligation. The court stated: "Nothing in the statute requires proof that an obligor intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability. The primary design and purpose of R.C. 3113.21.5 are to protect and ensure the best interests of children." Rock, at 111. "A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support." Williams v. Williams (Sept. 24, 1992), Franklin App. No. 92AP-438, unreported.
The imputation of income upon a party involves a two-step process. First, the trial court must find that the parent is voluntarily unemployed or underemployed. If the court so finds, then the trial court determines the amount of income to impute, based upon the factors in R.C. 3113.21.5(A)(5)(a), and the facts and circumstances in the case.
In this case, the magistrate found that appellee was voluntarily underemployed and imputed income of $153,000 to appellee. This finding was based upon the fact that appellee was making approximately $175,000 as a stockbroker at Prudential Securities before he was terminated. At the time of the hearing, appellee was employed at J.R.P. Capital, Inc., making $22,000 per year. Testimony at trial established that appellee was terminated based upon two customer complaints and a thirty-day sit down (or period of suspension from trading) from the American Stock Exchange. These incidents were based upon allegations of unauthorized trading and unsuitability which violated both company policy and the rules of the American Stock Exchange. Appellee testified that this was the second time he had been terminated from a job as a stockbroker.
While appellee attempted to deflect blame by testifying that his supervisor reviewed all trades, his supervisor testified that the trades were only reviewed to check whether the amount was within the broker's level of trade. Appellee's supervisor also testified that he would ordinarily receive only one or two complaints per year for all thirty-five brokers he supervised. Appellee testified that there was no admission of liability for the complaints; however, there were three financial settlements with clients. The magistrate specifically found appellee not credible. Thus, based upon his intentional and irresponsible acts for which he was terminated from his job, the magistrate imputed income to appellee.
In ruling on appellee's objections, the trial court found that appellee's testimony disputed his supervisor's testimony concerning whether he had warning about his termination and whether he vigorously looked for another position. Since appellee's testimony regarding his efforts to find comparable employment was not challenged, the trial court determined there was no reason to find that appellee's testimony was not credible. Thus, the trial court did not find that appellee was voluntarily underemployed.
The trial court further found that the magistrate did not fully consider the factors in Rock when he determined the amount of income to impute to appellee. The three factors include, the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides. The trial court found that there was no evidence in the record concerning prevailing job opportunities and salary levels in the community in which appellee resides, and no expert testimony concerning appellee's occupational qualifications or the prevailing job opportunities and salary levels available to a stockbroker with a tarnished record. Without such evidence, the trial court found an imputation of income was erroneous.
This court has held that a trial court acts in an arbitrary manner and abuses its discretion when it imputes income to a parent without first considering evidence related to the factors in Rock. See Marsh v. Marsh (1995), 105 Ohio App.3d 747,751; Leonard v. Erwin (1996), 111 Ohio App.3d 413, 417; Workman v.Santiago (Dec. 7, 1993), Franklin App. No. 93AP-475, unreported. Thus, the trial court in this case did not abuse its discretion in refusing to impute $153,000 in income to appellee since there was no evidence related to appellee's occupational qualifications, the prevailing job opportunities and salary levels in this community.
Appellant argues that the trial court erred in requiring her to provide expert testimony regarding appellee's occupational qualifications, the prevailing job opportunities and salary levels in this community, because that would improperly shift the burden of proof. We agree with the Eleventh District Court of Appeals inKelly-Doley v. Doley (Mar. 12, 1999), Lake App. No. 96-L-217, unreported, in which the court stated:
 In this context, we note that there is very little case law available, if any, as to which party has the burden of production or burden of proof when there is a claim that one parent is voluntarily unemployed/underemployed and that a certain amount of income should be imputed to that parent. Unfortunately, the Rock decision does not offer particular guidance on this point.
 Thus, we believe that the parent who claims that his or her former spouse is underemployed or voluntarily unemployed has the burden of proof on that issue. If evidence of such fact can be established, the burden then shifts to the unemployed or underemployed spouse to show that he is working and/or earning up to his potential. * * *
See, also, Phyillaier v. Phyillaier (Sept. 1, 1999), Shelby App. No. 17-98-21, unreported. Thus, the burden of proof was properly allocated to appellant to show that appellee was voluntarily underemployed. Without such evidence of the three factors in R.C. 3113.21.5(A)(5)(a), the trial court would have abused its discretion in imputing income to appellee. As such, the trial court did not err. Appellant's first assignment of error is not well-taken.
By her second and third assignments of error, appellant contends that the trial court's failure to consider appellee's net assets of over $900,000 and gross income from sixty-five rental units of over $183,000 in calculating child support was an abuse of discretion. Appellee testified that his income is $34,000 per year, including $22,000 from J.R.P. Capital, Inc., and $12,000 in rental income from the King Avenue rental building which he owns. Appellee testified that, in August 1996, he stated in a personal financial statement for a loan application to State Savings that his net worth was over $800,000; in April 1997, he stated in a personal financial statement for a loan application to State Savings that his net worth was $937,000; and in October 1997, he stated in a personal financial statement for a loan application to State Savings that his net worth was $907,000. Appellee testified that these amounts were "legally" correct, although not "ethically" correct. Appellee owns sixty-five rental units which generate approximately $195,000 per year in rental income; however, on his federal income taxes, appellee claims depreciation and deductions so there is no income from the properties other than the King Avenue property ($12,000). Appellee testified that he is current in paying all his debts. Although he testified he had to borrow money, he was able to purchase another rental property (King Avenue rental in late 1997), play golf and take vacations. Although appellee argues this evidence was not before the trial court for the motion to modify child support, this testimony and the accompanying exhibits were presented to the court. (See Tr. Vol. II, 119-121; Appellant's Exhibit A, B and C.)
The trial court did not consider appellee's net assets or any rental income when determining his income for child support purposes. As defined above, R.C. 3113.21.5(A) defines "income" as gross income or the potential income of an unemployed or underemployed parent. "Gross income" means the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to, income from salaries, wages, overtime pay and bonuses, commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities and potentialcash flow from any source. The trial court erred in failing to consider appellee's net assets.
The magistrate and the trial court both determined that appellee had no income from the rental properties, other than the $12,000 he testified to from the King Avenue property. The magistrate determined that both parties failed to comply with the requirement of R.C. 3113.21.5(B)(5)(a), that they verify current and past income with suitable documents related to self-generated income; however, appellee did submit Exhibits 37-42, which are summaries of receipts and expenses related to the rental properties. Appellant failed to introduce evidence contradicting those figures. The exhibits demonstrate gross annual rents of $183,198, and ordinary and necessary business expenses of $195,346. The trial court did not enter any rental income or ordinary and necessary business expenses other than the $12,000 from King Avenue in the child support worksheet.
Appellant argues that Kamm v. Kamm (1993), 67 Ohio St.3d 174, is controlling in this case and the trial court erred in failing to deviate from the child support guidelines because appellee was able to reduce his self-employment income by deducting ordinary and necessary expenses. In Kamm, a self-employed farmer purchased farm equipment for $22,000 and the court held that the $22,000 could be deducted from the farmer's income for that year in calculating child support because it was ordinary and necessary and an actual cash expenditure was made.Kamm, paragraph one of the syllabus. However, the court warned that self-employed parents could abuse the deduction and reduce their income by purchasing a capital asset every year and deducting such as an expense. The court noted that this situation may be grounds for deviation from the child support guidelines providing that the best interest of the child is considered. SeeKamm, paragraph two of the syllabus. Appellant argues that the trial court should have deviated from the child support guidelines in this case.
However, appellant failed to make this argument in the trial court and failed to file any objections to the magistrate's decision and raise this issue in the trial court. Generally, an issue need not be considered on appeal when it was apparent at the time of trial but not raised. Republic Steel Corp. v. Bd. ofRevision (1963), 175 Ohio St. 179, syllabus. Civ.R. 53 prohibits a party from raising an issue on appeal when an objection to the magistrate's decision raising that issue was not filed. See, also, Ricart North, Inc. v. B.W. Towing, Inc. (May 25, 1999), Franklin App. No. 98AP-926, unreported. Thus, appellant is barred from raising this issue for the first time on appeal. Appellant's second assignment of error is well-taken as to the net assets but not as to the rental income, and her third assignment of error is not well-taken.
By her fourth and fifth assignments of error, appellant contends that the trial court abused its discretion in imputing income to her when she has not worked in over ten years, and there was no evidence presented of prevailing job opportunities and salary levels in the community in which she resides. The trial court found that she is voluntarily unemployed, and imputed $42,500 in income to appellant. Appellant had worked as an attorney for six years before Ian was born. Since that time, she has chosen to be a stay-at-home mother. A vocational consultant testified that, in the central Ohio labor market, a person with appellant's qualifications could earn between $40,000 and $45,000. The trial court used the average of these two figures. Appellant argues that, since she has not worked for ten years, imputing income to her is an error and, since she lives in Ostrander, using the central Ohio labor market is incorrect and the trial court should have used the Delaware labor market for comparison. Appellant testified that she had planned to return to work, at least part-time, when the children were in school full time. Also, she admitted that she could earn $40,000 if she wanted to work. The child support worksheet that she submitted imputed income to her of $40,000. The trial court did not err in imputing such income to appellant. Appellant's fourth and fifth assignments of error are not well-taken.
By her sixth assignment of error, appellant contends that the trial court abused its discretion in failing to award attorney fees, guardian ad litem fees and the court-appointed psychologist fees where it is clear that appellee has more relative ability to pay the fees. The magistrate had ordered appellee to pay all of the costs of the proceedings except for a nominal portion of appellant's attorney fees attributable to her unsuccessful contempt action. Therefore, the magistrate ordered appellee to partially reimburse appellant for her attorney fees in the amount of $27,000, reimburse her $1,991.95 she has paid to the court-appointed psychologist, and $5,176.25 she paid to the guardian ad litem. The trial court ordered the parties to each pay one-half of the remaining guardian ad litem fees, as well as the court-appointed psychologist, and also ordered appellee to pay appellant one-half of her remaining attorney fees, which was approximately $6,000.
An award of attorney fees is within the discretion of the trial court. Nye v. Dimon (June 18, 1998), Franklin App. No. 97APF09-1220, unreported. In Hamilton v. Hamilton (1988),40 Ohio App.3d 190, 196, this court stated, as follows:
 * * * [A]ttorney fees for obtaining and/or enforcing child support are a legitimate element of a support order, and when so ordered they are additional child support and not attorney fees. * * *
In Hummer v. Hummer (Aug. 28, 1986), Franklin App. No. 86AP-293, unreported, this court stated that, in a child-support proceeding, an attorney-fee award is in the nature of child support and it is within the court's authority to award attorney fees which should be determined based upon the circumstances of each case. This court also discussed the factors a court should balance when determining if an award of attorney fees is warranted, as follows:
 * * * The factors to be considered include the needs of the children, the change in circumstances including increases in income, the assets of the parties, the ability or inability of each party to pay attorney fees, the degree of increase in child support awarded, the total amount of the attorney fees, the proportion of attorney fees caused by undue delay or resistance by either party in resolving the child-support issue, and the effect of payment of attorney fees upon the custodial parent's ability to contribute a proportionate share of child support. * * *
Hummer, citing Cohen v. Cohen (1983), 8 Ohio App.3d 109.
The trial court determined that, pursuant to R.C.3105.18(H), both parties had been able to adequately protect their interests because they had paid a portion of their attorney fees. The trial court considered the relative merits of appellee's claim and determined that, since appellant had moved to Ostrander, appellee did have a meritorious claim in requesting the court to consider a reallocation of parental rights and responsibilities. With appellee's decrease in income, the trial court also found the motion to decrease child support meritorious. Since the trial court did not consider the factors provided in Hummer, we find the trial court abused its discretion. Appellant's sixth assignment of error is well-taken.
By his cross-assignments of error, appellee contends that the trial court abused its discretion in making a complete redetermination of parental rights and responsibilities, rather than limiting the scope of the proceedings to the narrow issue of whether to modify the designation of the residential parent for school placement purposes and make an accompanying minor modification to the companionship schedule in the parties' shared parenting plan. Although appellee requested that he be designated as the residential parent for school placement purposes, that the children be required to attend the Upper Arlington schools and the residential schedule be changed so that the children reside with him on Tuesdays and Thursdays from 4:30 p.m. until the following morning at 9:00 a.m. during the school year, the magistrate, and the trial court, found that it was in the best interest of the children to terminate the shared parenting plan and designate appellant as the residential parent and legal custodian of the children, and adopted the court's model schedule for companionship and visitation with modifications that were suggested by the guardian ad litem.
R.C. 3109.04(E)(2)(c) provides that the court may terminate a shared parenting plan upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children. R.C. 3109.04(E)(2)(d) then provides that, upon termination of the shared parenting decree, the court must issue a modified decree for the allocation of parental rights and responsibilities. Thus, the trial court may sua sponte terminate the shared parenting decree upon a finding that shared parenting was not in the best interest of the children.
In this case, the trial court specifically found that shared parenting was not in the best interest of the children. The magistrate found, and the trial court agreed, that the shared parenting plan required the parties to be able to cooperate and make joint decisions, yet the parties have been unable to agree upon much of anything. Therefore, the existing plan was not working in the best interest of the children. The record supports the finding that the parties were unable to make joint decisions and had a great deal of hostility between them. The parties could not agree upon which school system the children should attend. The parties were unable to agree upon the definition of long weekends in the shared parenting plan and many disagreements arose as a result. There was controversy involving declared vacation time within the shared parenting plan. Other disagreements arose, such as where the children should play summer baseball and which family events the children should attend. Appellee testified that he purchased a wardrobe for the children to remain at his house because the parties disagreed over clothing. Although appellee testified that he believed the shared parenting plan had been working, appellant testified that she believed the parties could not work well together, lacked the ability to communicate and generally had an atmosphere of controversy. Appellant did not feel the plan worked well and wanted it terminated by the court. The trial court did not abuse its discretion in finding that the disagreements between the parties, the inability to cooperate and make joint decisions had an adverse effect on the children, and that the shared parenting plan was not in the best interest of the children. Appellee's first cross-assignment of error is not well-taken.
By his second cross-assignment of error, appellee contends that the trial court abused its discretion in holding that the record was void of sufficient evidence demonstrating that the shared parenting plan was premised on appellant remaining in the Upper Arlington school district. The shared parenting plan designated appellant's address as the children's residence for school placement purposes. Appellee argues that this provision was premised on the fact that appellant lived in Upper Arlington at the time the shared parenting plan was made and that this provision was founded on the premise that appellant would remain in Upper Arlington; however, the trial court found no evidence in the record that appellant agreed to remain in Upper Arlington until the children graduated from Upper Arlington schools.
Appellee testified that appellant had investigated Upper Arlington schools, chose Wickliffe Elementary for Ian, and participated in a $200,000 addition to the marital home; however, while those facts indicate a willingness to remain in Upper Arlington while married, there is no evidence in the record that appellant agreed to remain in Upper Arlington until the children were no longer in school. The record also demonstrates that appellant had always expressed a desire to live on a farm and was unhappy with the Upper Arlington "way of life." Appellee was aware of both of these facts. In fact, the parties had investigated purchasing a farm while married. Appellant also testified that, when negotiating terms of the shared parenting plan, she would not agree to specific language requiring her to remain in Franklin County. There is no language in the shared parenting agreement requiring either party to remain in Upper Arlington. Thus, the trial court did not err in finding that the record did not demonstrate that the shared parenting plan was premised on appellant remaining in the Upper Arlington school district. Appellee's second cross-assignment of error is not well-taken.
By his third cross-assignment of error, appellee contends that the trial court abused its discretion in finding that termination of the parties' shared parenting plan and that designation of appellant as the residential parent was in the best interest of the children. In appellee's first cross-assignment of error, we determined that the record supported the trial court's finding that terminating the shared parenting plan was in the best interest of the children. The trial court also designated appellant as the residential parent, which appellee contends was an abuse of discretion.
The trial court analyzed the factors set forth in R.C.3109.04(F), and determined that it was in the best interest of the children to terminate the shared parenting plan and to designate appellant as the residential parent. The trial court relied on several factors, including that appellant has always been the primary caregiver as well as the parent most involved in the educational process and medical needs of the children. The court also agreed with the magistrate's finding that appellee has significant gaps in his understanding of the children's basic psychological and emotional needs, and is not as perceptive to the needs or desires of the children. The court also found that work did not justify appellee's lack of involvement and, since his change in employment, he had failed to become more involved. Another factor in the court's decision was the finding that appellant is the parent more likely to honor and facilitate visitation. The trial court did not abuse its discretion and appellee's third cross-assignment of error is not well-taken.
In all three of her assignments of error in case No. 99AP-818, appellant raises issues contending that the trial court lacked jurisdiction to further reduce the child support and erred in doing so. Since we have determined that the trial court erred in its computation of child support and must recalculate it, these assignments of error have been rendered moot and are overruled.
For the foregoing reasons, in case No. 99AP-453, appellant's first, third, fourth and fifth assignments of error are overruled, her second assignment of error is sustained in part and overruled in part, and her sixth assignment of error is sustained; appellee's three cross-assignments of error are overruled; and appellant's three assignments of error in case No. 99AP-818 are overruled as moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded with instructions.
LAZARUS and PETREE, JJ., concur.