[Cite as *Harmon v. ODJFS*, 2022-Ohio-1142.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| MALISSA R. HARMON, | : | CASE NO. CA2021-08-105 |
| Appellant, | : | O P I N I O N<br>4/4/2022 |
| | : | |
| - vs - | : | |
| | : | |
| OHIO DEPARTMENT OF JOB AND<br>FAMILY SERVICES, et al., | : | |
| | : | |
| Appellees. | | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 021 04 0567


Malissa R. Harmon, pro se.

Dave Yost, Attorney General of Ohio, and Robin A. Jarvis, Sr., Assistant Attorney General, for appellee, Ohio Department of Job and Family Services.


**M. POWELL, P.J.**

{¶ 1} Appellant, Malissa Harmon, appeals from the decision of the Butler County Court of Common Pleas affirming the decision of the Unemployment Compensation Review Commission ("UCRC" or "Review Commission") to disallow her application for unemployment compensation benefits on the basis that she did not meet the "employment"

requirement of R.C. 4141.01(R). For the reasons that follow, we reverse the judgment of the common pleas court.[1]

{¶ 2} Harmon began working for Intelligrated Services, LLC ("Intelligrated") in 2010. In 2016, Intelligrated was acquired by Honeywell International, Inc. ("Honeywell"), and Harmon's employment continued with Honeywell. Approximately two years later, in February 2018, Harmon suffered an injury and took a leave of absence from work via Honeywell's short term disability policy. Thereafter, Harmon was diagnosed with depression and became totally disabled as a result of her diagnosis. At that point, Harmon transitioned to long term disability pursuant to Honeywell's benefits plan.

{¶ 3} On August 15, 2018, Harmon began receiving long term disability payments in the amount of $2,657.00 per week pursuant to Honeywell's long term disability plan. Harmon's disability payments were paid by CIGNA Group Insurance ("CIGNA") under Honeywell's policy with CIGNA.

{¶ 4} In August 2019, CIGNA informed Harmon that she had been absent from work for more than 18 months, which is the maximum leave duration under Honeywell's medical leave policy, and that the length of her absence could affect her "active job status." According to CIGNA, because the last day Harmon physically worked prior to going on disability leave was February 13, 2018, she had been absent for more than 18 months and her employment would be terminated unless she was able to return to work at Honeywell in the foreseeable future.

{¶ 5} On August 27, 2019, Harmon informed Honeywell that she was unable to return to work. Honeywell responded that Harmon could not maintain her "current job status" and terminated her employment, effective October 3, 2019. Despite her termination

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar for purposes of issuing this opinion.

from Honeywell, Harmon continued to receive long term disability payments from CIGNA under Honeywell's policy until August 15, 2020.

{¶ 6} After her termination, Harmon applied for unemployment compensation. Although Harmon's application was filed on August 31, 2020, it includes a "designated effective date" of March 15, 2020. On October 8, 2020, appellee, Ohio Department of Job and Family Services ("ODJFS"), disallowed Harmon's application for unemployment compensation on the basis that she did not have at least 20 qualifying weeks of employment that was subject to the unemployment compensation law or did not earn a sufficient average weekly wage as required by R.C. 4141.01(R). Harmon appealed ODJFS' determination. Upon redetermination, ODJFS affirmed its decision and disallowed Harmon's application on the same basis.

{¶ 7} Harmon appealed ODJFS' redetermination to the UCRC and a telephone hearing was held before a hearing officer. At the hearing, the hearing officer indicated Honeywell stopped reporting wages for Harmon the first quarter of 2019. The last time Honeywell reported any weeks worked was in the third quarter of 2018, during which Honeywell indicated Harmon worked for 6 weeks and earned $3,601.

{¶ 8} After considering the above, the hearing officer determined Harmon was not eligible to receive unemployment compensation benefits because she did not work 20 weeks during her base period. Thus, the hearing officer affirmed ODJFS' redetermination, and disallowed Harmon's application on the basis that she failed to establish enough qualifying weeks during her base period or alternate base period. Harmon appealed the UCRC's decision, however, the UCRC denied a further review.

{¶ 9} Thereafter, Harmon appealed the matter to the common pleas court. On appeal, Harmon argued her disability benefits constituted remuneration and employment for unemployment compensation purposes. After its review, the common pleas court

rejected Harmon's argument and affirmed the decision of the UCRC. In so doing, the court determined, in relevant part, that Harmon did not meet the employment requirement for unemployment compensation because,

> [r]egardless of whether one uses Harmon's base period of unemployment or alternate period of unemployment, the simple fact remains she did not work. Harmon received a benefit offered by her employer as a part of its compensation package, but performed no service benefitting that employer.

{¶ 10} Harmon now appeals, raising three assignments of error for our review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED BY FINDING APPELLANT'S DISABILITY PAYMENTS DOES (SIC) NOT MEET THE DEFINITION OF REMUNERATION FOR WORK UNDER OHIO COMPENSATION LAW.

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED BY FINDING THAT THE APPELLANT DID NOT FILE A VALID APPLICATION FOR UNEMPLOYMENT COMPENSATION BENEFITS BECAUSE SHE DID NOT WORK OR PERFORM ANY SERVICES FOR HER EMPLOYER FOR TWENTY WEEKS DURING HER BASE PERIOD OR ALTERNATE BASE PERIOD.

{¶ 15} In her first and second assignments of error, Harmon argues the common pleas court erred in affirming the UCRC's decision disallowing her application for unemployment benefits on the basis that she did not meet the employment requirement for unemployment compensation. Harmon claims the court's decision is contrary to Ohio law and must be vacated and reversed.

{¶ 16} When reviewing a decision of the Unemployment Compensation Review Commission, both the court of common pleas and appellate court must affirm the Review Commission's decision unless it is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d

- 4 -

694, 696 (1995); R.C. 4141.282(H). In considering whether a judgment is against the manifest weight of the evidence in civil or criminal cases, a reviewing court must "weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed[.]'" *Odom Indus., Inc. v. Shoupe*, 12th Dist. Clermont No. CA2013-09-069, 2014-Ohio-2120, ¶ 11, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶ 17} Given the limited standard of review employed in unemployment compensation cases, "reviewing courts are not permitted to make factual findings or determine the credibility of the witnesses[,]" and "[f]actual questions remain * * * solely within the province of the Review Commission." *Odom Indus.*, *Inc.* at ¶ 12, citing *Chen v. Ohio Dept. of Jobs & Family Servs.*, 12th Dist. Clermont No. CA2011-04-026, 2012-Ohio-994, ¶ 17. However, reviewing courts have the duty to determine whether the Review Commission's decision is supported by the evidence in the record, and this duty is shared by all reviewing courts, from the first level of review in the common pleas court through the final appeal. R.C. 4141.282(H); *Watts v. Cmty. Health Ctrs. Of Greater Dayton*, 12th Dist. Warren No. CA2015-07-068, 2015-Ohio-5314, ¶ 13. Indeed, "[t]he focus of an appellate court's review on an unemployment compensation appeal is upon the Review Commission's decision [rather than the common pleas court's decision] and whether such decision is supported by evidence in the record." *Watts* at ¶ 13, citing *Odom Indus., Inc.*

{¶ 18} Pursuant to R.C. 4141.01(R)(1), Harmon's application for unemployment compensation benefits was valid if (1) she was unemployed, (2) she had been employed for at least 20 qualifying weeks during her base period, and (3) she had earned or been paid remuneration at an average weekly remuneration of not less than 27.5 percent of the statewide average weekly wage for those weeks. R.C. 4141.01(R)(1).

{¶ 19} Because the UCRC denied Harmon's application on the basis that she was not employed for at least 20 qualifying weeks during her base period, our review is limited to whether Harmon's employment at Honeywell satisfied the second prong of R.C. 4141.01(R)(1).

{¶ 20} The term "[q]ualifying week" means any calendar week in an individual's base period with respect to which the individual earns or is paid remuneration in employment subject to this chapter. R.C. 4141.01(O)(1). The term "[b]ase period" means "the first four of the last five completed calendar quarters immediately preceding the first day of an individual's benefit year[.]" R.C. 4141.01(Q)(1). Using March 15, 2020, i.e., the backdated effective date of Harmon's application, and her established benefit year of March 15, 2020 to March 13, 2021, Harmon's base period is the fourth quarter of 2018 through the third quarter of 2019. Thus, in order for her application to be valid, Harmon was required to have earned or been paid remuneration while "employed" for 20 weeks between the fourth quarter of 2018 and the third quarter of 2019.

{¶ 21} It is undisputed that Harmon was on Honeywell's long term disability benefit plan throughout her entire base period. Consequently, the dispositive issue in this case is whether Harmon's receipt of disability payments, resulting from an employer-approved medical leave and paid by an insurance company via her employer's policy, constitutes "employment" pursuant to R.C. 4141.01(R).

{¶ 22} Employment is generally defined as "service performed by an individual for remuneration under any contract of hire, written or oral, express or implied." R.C. 4141.01(B)(1). Thus, the statute requires both remuneration and service in order to be eligible for unemployment compensation. *Koval v. Dir. Ohio Dept. of Jobs & Family Servs.*, 8th Dist. Cuyahoga No. 79424, 2001 Ohio App. LEXIS 5080, *5 (Nov. 15, 2001). "'Remuneration' means all compensation for personal services, including commissions and

bonuses and the cash value of all compensation in any medium other than cash[.]" R.C. 4141.01(H)(1).

{¶ 23} It is undisputed that Harmon did not actually perform any work during her base period or alternate base period. As such, appellee, ODJFS, contends Harmon does not meet the employment requirement because she performed no service for Honeywell after February 13, 2018. Conversely, Harmon contends she was employed during her base period due to her receipt of disability benefits from Honeywell's policy during that time.

{¶ 24} In support of her position, Harmon relies extensively on *Shepherd v. Wearever-Proctor Silex, Inc.*, 75 Ohio App.3d 414 (4th Dist.1991). In that case, the plaintiff was placed on medical leave and received disability income from an insurance company pursuant to a disability insurance policy with her employer. *Shepherd* at 415. The plaintiff returned to work approximately ten months later but was laid off shortly thereafter. *Id.* At that point, the plaintiff applied for unemployment compensation. *Id.* Upon reviewing the plaintiff's application, which was initially denied, the Review Commission determined that the disability income received by the plaintiff did not meet the statutory definition of "remuneration" and, consequently, the weeks in which she received disability income did not constitute "qualifying weeks" during her base period. *Id.* at 415-416.

{¶ 25} On appeal, the court analyzed whether the plaintiff's disability payments constituted payment for personal services when the plaintiff was unable to physically work due to her disability. *Id.* at 417. In reversing the Review Commission's decision, the court found that the weeks the plaintiff received disability income constituted qualifying weeks toward her base period. *Id.* Specifically, the court determined that the plaintiff's disability income constituted remuneration, i.e., compensation for personal services, during her base period, as the benefits were provided by the employer's insurance policy and were part of its "compensation for personal services rendered" by its employees. *Id.* Thus, the weeks

the plaintiff received such payments constituted "qualifying weeks" to be added to her "base period" and "alternate base period" in order to determine her eligibility for unemployment compensation benefits. *Id.* at 419.

{¶ 26} After a review, we agree with the Fourth District's interpretation of the definition of remuneration, and similarly conclude that Harmon's disability payments paid by CIGNA through Honeywell's policy constitute remuneration and compensation for personal services rendered by Harmon. As noted by the court in *Shepherd*, classifying Harmon's disability income as remuneration is consistent with the broad language of R.C. 4141.01(H)(1), which encompasses "*all* compensation for personal services" in its definition for remuneration. (Emphasis added.) *Id.* at 418-419. Additionally, such a broad interpretation of the definition of remuneration is supported by the Ohio Administrative Code, which defines the term "remuneration" to include "vacation pay or allowance, separation pay, holiday pay, paid absence allowance [and] downtime paid absence allowance[.]" Ohio Adm.Code 4141-9-04(B). As such, it is evident that the term "remuneration" was intended to encompass private disability payments an employee receives pursuant to her employer's disability policy. See *Shepherd* at 419.

{¶ 27} Because we conclude Harmon's disability payments constitute remuneration, we must next analyze whether Harmon satisfied the "service" requirement of "employment" during her base period. R.C. 4141.01(B).

{¶ 28} As noted above, although Harmon was an "active job status" employee during her applicable base period, she did not provide any physical service to Honeywell during that time. Notably, other courts in Ohio have found applicants eligible to receive unemployment compensation benefits in instances where they were "employed" but did not physically work or provide service during some or all of their applicable base periods. See *Shepherd* at 419; *Brooks v. Unemployment Comp. Review Commision*, 7th Dist. Monroe

- 8 -

No. 07-MO-1, 2007-Ohio-4986, ¶ 32-35; *In re Claim of Richardson*, 6th Dist. Erie No. E-97-140, 1998 Ohio App. LEXIS 3131, 10-11 (July 10, 1998); see also *Radcliffe v. Artromick International, Inc.*, 31 Ohio St. 3d 40, (1987) (finding an applicant eligible for unemployment compensation under R.C. 4141.291 where the employee remained under the employer's "employ" when she received severance pay but did not provide any services); *Dickson v. Thousand Trails Resorts*, 12th Dist. Clinton No. CA88-06-008, 1988 Ohio App. LEXIS 4443, *6 (Nov. 7, 1988) (finding the appellant's nine days of vacation pay should be treated as a period of employment).

{¶ 29} When considering these cases, Ohio law clearly recognizes that an applicant may be entitled to unemployment compensation and can establish "qualifying weeks" during her base period without providing actual service to an employer during that time. Such a proposition is consistent with the statutory language of R.C. Chapter 4141, which suggests an employee's service and remuneration for that service are not required to be contemporaneous to establish a qualifying week or constitute remuneration. See R.C. 4141.01(O)(1) (defining qualifying week to include weeks the individual "*earns or is paid* remuneration in employment"). (Emphasis added.); R.C. 4141.01(H)(1) (defining remuneration to include "*all* compensation for personal services"). (Emphasis added.)

{¶ 30} Based upon this language, we find that an employee's past "service" can be used to establish a "qualifying week" for unemployment compensation purposes. This is because R.C. 4141.01(O)(1) clearly indicates a qualifying week may be based upon remuneration that is earned before it is ultimately paid to the employee. As such, we conclude that an applicant, like Harmon, can establish a "qualifying week" based upon her receipt of disability benefits paid by her employer as remuneration in exchange for services she previously provided during her employment.

{¶ 31} ODJFS argues the above cases are distinguishable from the case at hand, as

they are based on a "flawed" application of R.C. Chapter 4141, in that they construe the unemployment compensation statutes liberally in favor of the applicant. See *Shepherd* at 417; *Brooks* at ¶ 40. In support, ODJFS cites *Bernard v. Unemp. Comp. Rev. Comm.*, 136 Ohio St.3d 264, 2013-Ohio-3121. In *Bernard*, the Ohio Supreme Court addressed the statutory mandate of R.C. 4141.46, which states that "Sections 4141.01 to 4141.46, inclusive, of the Revised Code shall be liberally construed." *Bernard* at ¶ 10. In so doing, the Ohio Supreme Court noted that '"courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command."' *Id.* at ¶ 12, quoting *Swallow v. Indus. Comm.*, 36 Ohio St.3d 55, 57 (1988). Thus, we must defer to the Review Commission's interpretation of R.C. 4141.01(R) "so long as the interpretation is reasonable." *Id.*

{¶ 32} After our review of the relevant cases, including *Bernard*, we conclude there is nothing in *Shepherd, Brooks, Richardson,* or *Radcliffe* to suggest that the various courts improperly applied R.C. 4141.46 in reaching their decisions. Furthermore, *Bernard* mandates that we defer to the UCRC's interpretation of R.C. 4141.01(R) only in instances where the agency's interpretation is reasonable. After reviewing the record and pertinent law, we find the UCRC's interpretation of the statute was unreasonable in this case. That is, we find it was unreasonable to conclude that Harmon was not employed during her base period simply because she did not physically provide services during that time. This is because, and as explained above, Harmon was an active status employee receiving remuneration in the form of disability payments while on an employer-approved disability leave during her entire base period. Harmon received this remuneration in consideration of the services she had previously provided to Honeywell before becoming injured and totally disabled in 2018.

{¶ 33} In light of the above, we conclude that the weeks during which Harmon received disability benefits during her base period are "qualifying weeks," and the UCRC erred in disallowing Harmon's application on the basis that she did not have 20 weeks of employment during her base period. Accordingly, we find that the UCRC's decision was unlawful, unreasonable, and against the weight of the evidence. Thus, the common pleas court's decision to affirm the UCRC's findings was equally erroneous.

{¶ 34} Therefore, Harmon's first and second assignments of error are sustained. The decision of the common pleas court is reversed and the UCRC's decision is reversed and vacated. The cause is remanded to the UCRC for further proceedings consistent with this opinion.

{¶ 35} Assignment of Error No. 3:

{¶ 36} BUTLER COUNTY COURT OF COMMON PLEAS ERRED IN ITS REASONING THAT HONEYWELL'S FAILURE TO PROPERLY REPORT DISABILITY PAYMENTS PAID TO ODJFS WAS NOT GERMANE TO THE PRESENT MATTER.

{¶ 37} In her final assignment of error, Harmon argues the common pleas court erred in concluding that Honeywell's alleged failure to report her disability payments to ODJFS was not relevant to her appeal. As discussed above, our review is limited to evaluating whether the findings of the UCRC are against the manifest weight of the evidence. *Tzangas,* 73 Ohio St.3d 694 at 696. Here, the UCRC disallowed Harmon's application on the basis that she did not meet the employment requirements of R.C. 4141.01(R). Whether Honeywell accurately reported Harmon's disability benefits has no impact on whether Harmon's application is sufficient pursuant to the second prong of R.C. 4141.01(R)(1) or whether she had sufficient qualifying weeks of employment. Consequently, because Honeywell's reporting of Harmon's disability benefits is not dispositive of any issue on appeal, it is not within the limits of our review. Accordingly, we reject Harmon's argument

and overrule her third assignment of error.

{¶ 38} Judgment reversed and remanded.

HENDRICKSON and PIPER, JJ., concur.